GEORGIA, &c., RAILWAY COMPANY v. RIDLEHUBER.

1. DECREE—ADDITIONAL GROUNDS.—Where the Circuit Judge dismissed a complaint because the relief demanded should be sought in another proceeding, this court cannot consider questions as to the merits, urged as grounds in support of the judgment, which, though taken in the court below, were not there passed upon.

2. RIGHT OF WAY—POWERS OF CLERK'S JURY.—The provisions of the statute law of this State, as to right of way for railroads (Gen. Stat., §§ 1550–;561), only govern the manner of claiming the right, and the mode by which the amount of compensation is to be ascertained, where the right to compensation is conceded, or has been already otherwise determined. But the statute law has prescribed no mode by which the disputed right of a land owner to compensation for the land over which a railroad has been constructed can be determined.

3. IBID.—IBID.—APPEAL.—The jury empaneled to determine the amount of compensation, not being presided over by any officer who is competent to instruct them in matters of law, are not expected to determine the right of the land owner to compensation; and on appeal from their finding, the appellate tribunal can only consider the matters which were passed upon by the jury.

4. CASES CRITICISED—HOMESTEAD—AGRICULTURAL LIEN.—Distinction pointed out between this case and cases arising under homestead and agricultural lien proceedings.

5. RIGHT OF WAY—RIGHT TO COMPENSATION—TRIAL.—There being no statutory provision by which a railroad corporation can raise the issue of a land owner's right to compensation for lands occupied by such railroad, it may have the question of right determined in an action instituted by itself in the Court of Common Pleas, to enjoin the land owner from proceeding to have the amount of compensation ascertained under the statute.

Before FRASER, J., Abbeville, June, 1892.

Action by the Georgia, Carolina and Northern Railway Company against G. C. Ridlehuber, trustee, F. C. Ridlehuber, and others, commenced October 16, 1890. So much of the Cir-

cuit decree as relates to the only point there determined was as follows:

The plaintiff claims that the instrument is a valid release of the right of way; that the question as to its validity cannot be made in the special proceedings above referred to, and that an injunction from the equity side of 'this court is the only remedy. "Parties who join (in these proceedings) must show a joint interest in the land, but this need not always be shown by deed." 1 Red. Rail., 271*. "The title of the petitioner may be inquired into on the return petition or of the report." *Church* v. *N. C. R. R. Co.*, 45 Pa. St., 339. "An appeal by a railroad company from an assessment of damages by commissioners appointed in pursuance of its charter brings up the whole case into the appellate court, where the parties can have every right relative to such damage adjudged and determined; therefore, a separate action will be dismissed." Wood's R. R. L., 850, note.

The right of parties to invoke the aid of these special proceedings is certainly a preliminary question, but a preliminary question to be settled in these cases themselves, and not necessarily in some other action brought for the purpose of having an adjudication of the rights to the land itself. If the question to the title, or of the ownership under the statute, can be raised at all, it can also be a subject of inquiry, whether the railroad company has not in some way a valid title to the right of way. It seems to be clear that the only cases in which special proceedings can be instituted, are those in which some railroad company seeks to condemn the land of some person or persons for railroad purposes. The inquiry is not only preliminary but fundamental; unless the petitioners have rights, there is nothing for the special proceeding to consider and pass upon.

When an issue is formed under an agricultural lien, the question to be submitted to a jury is, "whether the amount claimed is justly due?" Under this, all questions as to validity of the lien itself are decided. In matters of homestead, the only matter submitted to the commissioners is, in the words of the act, to "impartially appraise and set off a homestead by metes and bounds." They are required to make return, "giv-

ing metes and bounds" and "the value of the homestead so set
off." When exceptions are filed in due time and "good cause
is shown, the court may order a reapportionment and reas-
signment of the homestead." I have not found any express
provision for the adjudication of the right of homestead. It
seems to me that the right to do this is in the nature incident
to the proceeding. We, therefore, find that the court, in *Ex
parte Young, in re Brown* v. *Young,* 29 S. C., 298, sustained the
Circuit Judge, who confirmed the return of the commissioners
setting off a homestead as to some judgments, and not as to a
judgment based on a note antedating the Constitution of 1868.
In *Burnside* v. *Watkins,* 30 S. C., 462, the question whether a
claim of homestead was good against a certain judgment, was
considered and passed upon both in the Circuit Court and in
the Supreme Court.

In the same way, I think, that when a question of compensa-
tion for land taken for railroad purposes is raised on "ground
of appeal," all questions as to the right of compensation must
of necessity arise in the trial of the issue. (Const. S. C., art. II.,
section 23; Gen. Stat., § 1553; 3 Am. & Eng. Enc. L., 378;
"Compensation—a recompence for loss or injury.") It is some-
thing besides compensation, if a person, who has no title, can
compel a railroad company to pay him money for a right of
way over the land of some one else, or the right to which has
been properly released. Compensation is not mere valuation
of property. * * *

If these corporations could call in question the title of land
owners by an independent action before the special proceed-
ings would be allowed to go on, it might lead to burdensome
litigation and work a public wrong.

It is, therefore, ordered and adjudged, that the complaint be
dismissed.

*Mr. L. W. Perrin,* for appellant.

*Messrs. DeBruhl & Bradley,* contra.

February 21, 1893. The opinion of the court was delivered by
MR. CHIEF JUSTICE McIVER. On the 23d of September,

1890, the defendants herein filed their petition in the Court of Common Pleas against the plaintiff company, for compensation for the taking by said plaintiff of a right of way, and the construction of its road over and across a tract of land therein described, in which the prayer was, that said petition be filed in the office of the clerk of said court, and that said clerk be ordered to empanel a jury according to law, to ascertain the compensation to be paid for the use of the land required for the right of way, with such special damages as may be sustained by reason of the construction of said railway through said land. His honor, Judge Norton, granted an order in accordance with the prayer of the petition. Up to this point, the plaintiff had no notice of any of these proceedings; but after said order was granted, the clerk gave notice to the plaintiff herein of the filing of said petition and order, and that on a day named he would proceed to draw the jury as directed by said order. Thereupon the plaintiff instituted this action for the purpose of enjoining further proceedings under said petition and order, upon the ground that the defendants herein were not entitled to any compensation, for the reason that plaintiff had previously obtained from the defendant, G. C. Ridlehuber, as trustee and holder of the legal title, a valid release of the right of way. The defendants answered, denying the validity of said release of the right of way upon two grounds, amongst others: first, for want of power in the trustee to make such release, and, second, because the same was obtained by misrepresentation.

The case was referred to the master, to hear and determine all the issues of fact as well as law. At the reference, the defendants demurred upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The master overruled the demurrer, and found that the deed releasing the right of way was not obtained by any intentional misrepresentation, but that the trustee had no power to make such a deed, and, therefore, recommended that the complaint should be dismissed. To this report the defendants excepted upon the ground, amongst others, that the master erred in overruling the demurrer. The case was heard by his honor, Judge Fraser, upon the report and the several exceptions there-

to, who, without considering or deciding any of the other issues in the case, rendered judgment, dismissing the complaint upon the ground that inasmuch as, in his opinion, all the issues presented could and should be determined under the special proceedings instituted by the defendants to obtain compensation, there was no necessity for any separate action to determine such issues.

From this judgment plaintiff appeals upon the several grounds set out in the record, but which need not be repeated here, as they substantially present the single question, whether the Circuit Judge erred in holding that the several issues tendered by the pleadings in this case could and should be determined under the special proceeding instituted by the defendants for the purpose of obtaining compensation, and hence constituted no ground for a separate action; for if he was right in this ruling, then clearly he was right in declining to consider the other issues; and if he was wrong, it is then equally clear that he should have proceeded to determine the other issues. The defendants, however, having given notice, according to the proper practice, that they would ask this court to sustain the judgment below upon other grounds stated in the record, it will be necessary to dispose of them. None of these grounds state additional reasons for the ruling below, but, on the contrary, they proceed upon the supposition, that even if the ruling below was erroneous, yet the complaint should have been dismissed upon grounds going to the merits, which were not considered by the Circuit Court, and, therefore, present nothing for us to review under this appeal.

Recurring, then, to what we consider the only question properly before us, it will be necessary to inquire whether there are any, and if so what, statutory provisions applicable to this question. These provisions are claimed to be found in sections 1550–1561 of the General Statutes, to which an additional section has been added by the act of 1885, 19 Stat., 168, the provisions of which, however, are not pertinent to the present inquiry. It will be observed that these sections "do not purport to confer the right to take or condemn the property of the citizen for the construction of a railway or

other structure of a like kind, under the right of eminent domain, for this is conferred by the charter of the company claiming such right, and these sections only purport to prescribe the *manner* in which this is to be done, and the mode by which the amount of compensation is to be ascertained." *Ross* v. *Railway Company*, 33 S. C., at page 483. A brief review of the provisions of these sections will not only show this, but will show further, that while provision is made for the mode by which a railway company may acquire the right to enter upon the lands of another without his consent, for the purpose of constructing its road, there is no provision made by which *the right* to compensation can be tested, where the company has been permitted to enter upon the lands of the owner thereof and to construct its road; but the only provision is as to the mode of ascertaining *the amount* of compensation to which the land owner may be entitled. For the statute seems to proceed upon the assumption either that *the right* to compensation has been conceded, or has been already determined in some other way.

Section 1550 provides that a railway company, before entering upon lands for the purpose of constructing its road, shall give the land owner notice that the right of way is required over his land, and if such land owner does not, within the prescribed time, signify in writing his refusal of consent, it shall be presumed that such consent was given, and the company may thereupon enter upon the land for the purpose of constructing its road; but this shall not deprive the land owner of the right to move for "an assessment of compensation" in the manner prescribed in the subsequent sections. But if the land owner signify his refusal of consent, then section 1551 provides that the company shall apply by petition to the judge of the circuit "for the empaneling of a jury to ascertain the amount which shall be paid as just compensation for the right of way required," and on hearing the petition the judge shall order the same to be filed, and direct the clerk to empanel a jury "to ascertain the compensation for the use of the lands required;" and it shall be the duty of the clerk, "immediately on receiving such order, to give to the owner of the lands notice thereof in writing, and

of the day which shall be assigned." Section 1552 provides that the jury so empaneled "shall proceed to inspect the premises and to take testimony in reference to the construction of the proposed highway, and the quantity of land which shall be required therefor; and irrespective of any benefit which the owner may derive from the proposed highway, and with respect alone to the quantity and value of the land which may be required, and to the special damage which the owner may sustain by reason of the construction of the highway through his lands, they shall ascertain the amount of compensation which shall be made to the owner thereof, and shall render their verdict in writing for the same." Section 1553 gives the right of appeal "from the verdict so rendered" to the Circuit Court, "and upon the hearing of such appeal, if the court shall be satisfied of the reasonable sufficiency of the grounds, an issue shall be ordered, in which the appellant shall be the actor, and the question of compensation shall be thereupon submitted to a jury in open court, whose verdict shall be final and conclusive, unless a new trial shall be ordered by the Supreme Court."

Section 1554 relates only to the mode of ascertaining the amount of compensation to be paid for land taken for the construction of depots, station houses, &c., and has no application to the question in this case. Section 1555 relates only to the manner in which persons not *sui juris*, or who are absent from the State, may be served with the required notices, and its provisions are not pertinent to the present inquiry. Section 1556 and section 1557 relate to matters outside of the present inquiry, and their provisions need not be stated. Section 1558 provides, "if in any case the owner of any lands shall permit the person, or corporation, requiring the right of way over the same to enter upon the construction of the highway without previous compensation, the said owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same in the manner hereinbefore directed." Sections 1559, 1560 and 1561 relate to matters which throw no light upon the present inquiry, and their provisions need not be stated.

From this brief review, it seems to us obvious that, while a

special mode of proceeding has been prescribed for ascertaining *the amount* of compensation to which the land owner, in a case like this, shall be entitled, where *the right* to compensation is either conceded or has been already determined, there is no mode prescribed by which such right can be tested when it is denied.   Where, as in a case like the present, a party, claiming to be the owner of the land over which a railway has been constructed, demands compensation for the right of way, he is authorized "to petition for an *assessment* of the same in the manner hereinbefore directed," and as "the manner hereinbefore directed" is prescribed in sections 1551, 1552, and 1553 only, we must look to the provisions of those sections in order to determine the question whether they provide for anything more than a mere ascertainment of *the amount* of the compensation.   The first step in the proceeding there prescribed is an *ex parte* petition, addressed to the judge of the circuit, praying "for the empaneling of a jury"—for what purpose? *not* to try first the question of *the right* to compensation, and then to ascertain the amount thereof, but simply "to ascertain the amount which shall be paid as just compensation for the right of way required."   The next step is likewise an *ex parte* order, made without notice, and, therefore, without any opportunity to object to the same, or to raise any question in reference to it, requiring the clerk to file the petition, and to empanel a jury for the purpose above stated, and then, for the first time, notice is required to be given, only for the purpose, as it would seem from the remaining provisions of the section, of enabling the parties to be present at the drawing of the jury, so that either might object to any juror, "on the ground of disqualification on account of interest."   Then the next section, 1552, directs that the jury, after being first duly sworn "to determine the question of compensation submitted to them," which, as we have seen, was *not* the right to compensation, but simply the amount thereof, "shall proceed to inspect the premises," &c., as set out in the quotation above from this section, which plainly shows that their inquiries are limited only to the *amount* of the compensation, and shall render their verdict for the same.

The provision in section 1553, giving the right of appeal "from the verdict so rendered," can not affect the question, for an appeal necessarily involves the idea of a review of such matters as have been passed upon by the tribunal from which the appeal is taken; and hence, under the appeal given by this section, the appellate tribunal could only consider whether the jury had erred in determining the question submitted to them, to wit, *the amount* of the compensation. Indeed, it is scarcely possible to suppose that the legislature ever intended that the jury empaneled under the provisions of these sections should be invested with the power to decide the question of *the right* to compensation, which might, and probably would in the present case, involve the consideration of nice legal points, upon which they could not receive any proper instructions, as there is no provision that their deliberations shall be presided over, or directed, by any judicial officer—not even by the clerk. And it would be in utter disregard of all just conceptions of the nature and office of an appeal to hold that questions which were not, and could not be, considered by the tribunal from which the appeal is taken, could be raised for the first time in the appellate tribunal. We cannot, therefore, give such a construction to the statute as would utterly disregard well settled principles of law. On the contrary, we must suppose that the intention of the legislature was to do no more than what they have plainly said—submit the question of *the amount* of compensation to the jury, leaving the question of *the right* to compensation to be determined in some more appropriate form.

The analogy sought to be drawn from the practice under the provisions of the homestead law and the agricultural lien law will not hold good. First, as to the homestead law. While we have a number of cases in which the Circuit Court has, under exceptions to the return of the commissioners appointed to set off the homestead, considered and determined the question of the right of homestead, yet we know of only one case in which the question, whether the Circuit Court could consider such a question when presented by exceptions to the return of the commissioners, has been raised; and

that is the recent case of *Ex parte Brown,* 37 S. C., 181. There the right of the Circuit Court to consider such question was affirmed, upon the ground that even if the officer—master or clerk, as the case may be—to whom the application for the appointment of commissioners to set off the homestead is made, has the power (which is more than doubtful) to pass judicially upon the right of homestead, yet, under the broad terms of the law, there is no reason why, under the exceptions to the return of the commissioners, the Circuit Judge may not consider and determine the question of right.

It will be observed, moreover, that the terms of the homestead law are very different from those of the sections which we have been considering, providing the mode of ascertaining the amount of compensation to which a land owner may be entitled for the right of way over his land. In the former, no *right of appeal* from the return of the commissioners is provided for; but the provision is: "If no complaint shall be made by any creditor or other person interested against said appraisal *and setting off of the homestead* within thirty days after the return of the appraisers, the same shall be confirmed," &c. But "if exceptions to such appraisement *and return* be filed," &c., then the court shall consider the same. Now, it seems to us that, in the absence of any limitations upon the kind of exceptions which may be taken, and in view of the words which we have italicized in the last preceding quotation, that the right to the homestead exemption may well be raised by the exceptions, as well as the correct valuation of the property set off as a homestead, notwithstanding the subsequent provision which, if there were nothing else, would seem to limit the exceptions to the question of valuation. The statute expressly provides that the right to the homestead exemption will not be perfected and complete until after the return has been confirmed by the court and recorded; and certainly whether the right to the exemption ought to be confirmed presents directly the question whether the claimant is entitled to such right.

Then, as to the agricultural lien law, it seems to us that the decisions in this State not only fail to support the analogy claimed by respondent, but, on the contrary, rather tend to

support the view which we have adopted. In *Johnstone* v. *Manigault*, 13 S. C., 403, it was held that, under an issue raised by a notice to the sheriff, within thirty days after the sale of the property seized under the warrant issued to enforce the lien, accompanied by an affidavit that the amount claimed was not justly due, no question as to the sufficiency of the affidavit upon which the warrant was obtained, or as to the right of the party obtaining the warrant to the summary relief provided by the statute, could be considered, as the only inquiry was whether the amount claimed was justly due, which, of course, means due under the lien, as was subsequently held in *Warren, Wallace & Co.* v. *Lawton*, 14 S. C., 476, and in *Sease* v. *Dobson*, 33 S. C., 234. On the trial of such an issue it is, of course, competent to inquire into the validity of the lien, 'for if there was no valid lien there could not be any thing due *under it*, as was held in the case last cited, in which both of the other two cases are recognized. But all other questions as to the sufficiency of the affidavit upon which the warrant was issued, or as to the legality of the warrant or the seizure, must be adjudicated in some other proceeding appropriate for the purpose.

It seems to us, therefore, that as the several sections of the statute providing for the manner of ascertaining *the amount* of compensation to which the land owner may be entitled, do not contemplate or provide for the trial of any issue as to *the right* to compensation, the plaintiff was at liberty to resort to the proceeding which was adopted, and that the Circuit Judge erred in holding otherwise.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for the purpose of hearing and determining the question whether the defendants are entitled to compensation as claimed for the right of way; and that, in the meantime, all further proceedings under the act to ascertain the amount of compensation be suspended.