13025

SEABROOK v. CAROLINA POWER & LIGHT CO. *ET AL.*

(156 S. E., 1)

2 

 February, 1930. 

*Messrs. Lee & Moise,* for appellant, 

*Messrs. Dargan & Paulling,* for appellants,

*Messrs. D. W. Robinson, H. D. Moise* and *McLeod & Shore,* for respondent,

November 12, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

While agreeing with most of the conclusions contained in the opinion of Mr. Justice Cothran, I do not agree with him as to what I conceive to be one important matter; and, for that reason, I am of the opinion that the order of the Circuit Judge should be affirmed.

In his complaint, with regard to the intention and purpose of the defendant power company to condemn and take for its use a certain portion of the plaintiff's lands, he alleged "that the said threatened acts of the defendant will constitute wanton and illegal trespass upon and irreparable injury to and destruction of the property of the plaintiff." The plaintiff further set up in his complaint that the intention and purpose of the defendant, if carried out, would result in injuring and destroying "much of the most valuable, essential and necessary shade and ornamental trees; it will render the use and occupancy of said home and homestead dangerous and undesirable, and will necessarily spoil and destroy the same"; and that "the proposed location in and over the premises of the plaintiff is unnecessary; * * * and by the exercise of reasonable care and prudence the said defendant can easily detour its proposed line."

The action is one for a permanent injunction. The only matter heard by the Circuit Judge was whether or not he should grant plaintiff an injunction *pendente lite,* until the case could be heard on its full merits. The plaintiff submitted affidavits of Mr. W. L. McCutchen, Dr. George W. Dick, and many other reputable citizens of Sumter, tending to support the allegations of the complaint which have been quoted. If these allegations are sustained at the proper time, and the plaintiff can convince the Court that the defendant is acting wantonly, as he has alleged, the plaintiff might be, to say no further at this time, entitled to a permanent injunction. On the showing already made, according to the

law of this State, the plaintiff was clearly entitled to the temporary injunction.

■ As it is conceded in the opinion of Mr. Justice Cothran, quoting his exact language, the only way possible, under our law, for the plaintiff, or any other citizen under similar circumstances, to protect himself against improper, unnecessary, unwarranted, or illegal condemnation proceedings on the part of a power company is "to contest the right to condemn by an independent action in the Court of Common Pleas, in equity." The cases cited by him, *Columbia Water Co. v. Nunamaker, 73* S. C., 550, 53 S. E., 996, and others, fully sustain this rule of our law. The plaintiff has adopted that course, the only one open to him.

■ Regarding the "necessity," which the law requires of a public service corporation, before it may exercise the right of condemnation, this Court, through Mr. Justice Stabler, recently laid down this reasonable and well-recognized rule:

"It is well-established law that necessity, as well as public use, must always exist in order to warrant the taking of lands, through condemnation, by a grantee of the power of eminent domain. The delegation of the right to exercise that power carries with it the implied condition that it shall be exercised only to the extent found necessary.

"As to what is meant, in this connection, by the term 'necessity,' we find the following in 20 C. J. at page 630: 'Necessity * * * does not mean an absolute but only a reasonable necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit. * * *'" *White v. Johnson et al.,* 148 S. C., 488, 146 S. E., 411, 412.

Touching this same subject, this Court, through Mr. Justice Hydrick, had the following to say:

"The necessity for the taking above referred to need not be absolute, but it should be reasonable; otherwise corporations invested with the power to condemn might arbitrarily and oppressively deprive the citizen of his property, when it is not necessary to the public good. 15 Cyc., 632.

"In either event above suggested, unless the injunction is granted, the plaintiff might be deprived of her property, not only without compensation, but she might be deprived of it without authority of law. The case falls squarely within the principle of *Riley v. Union Station,* 67 S. C., 84, 45 S. E., 149, and the cases therein cited." *Groce v. Railway Co.,* 94 S. C., 199, 78 S. E., 888, 889.

In the *Riley case,* cited in the *Groce case,* the Court said:

"The only question that can be considered at this stage of the case is whether the plaintiffs have made *prima facie* showing for the equitable relief by way of injunction. *Alston v. Limehouse,* 60 S. C., 568, 569, 39 S. E., 188. It is well settled in this State by numerous authorities that the statutes relating to condemnation proceedings thereunder do not provide the procedure for determining the right to institute such proceedings. The remedy under the statute for determining this right is therefore inadequate. When rights are to be adjudicated, and the statutes do not provide adequate remedy in the condemnation proceedings, the proper practice is for the party asserting such rights to bring an action in the Court of Common Pleas; and the Court, in the exercise of its chancery jurisdiction, will, upon a *prima facie* showing, enjoin the condemnation proceedings until the right to institute the proceedings under the statute can be judicially determined. In this case the plaintiffs made a *prima facie* showing entitling them to the injunction, and his Honor the Circuit Judge was in error in not so holding. These views are sustained by the following authorities: *Ry. Co. v. Ridlehuber,* 38 S. C., 308, 17 S. E., 24; *Cureton v. R. R. Co.,* 59 S. C., 371, 37 S. E., 914; *R.*

*R. Co. v. Tel. Co.,* 63 S. C., 201, 41 S. E., 307; *R. R. Co. v. Burton,* 63 S. C., 348, 41 S. E., 451.

"There is another reason why the temporary order of injunction should not have been refused. The plaintiffs' action was brought solely for obtaining an injunction, and the refusal to grant the temporary injunction practically disposed of the case without a hearing upon the merits. In *Cudd v. Calvert,* 54 S. C., 457, 32 S. E., 503, the Court uses this language: 'It seems to us, where, as in this case, the action is brought solely for the purpose of obtaining an injunction, and where, if the facts alleged in the complaint are found to be true, a proper case for injunction would be presented, it is error to dissolve a temporary injunction upon a mere motion heard upon affidavits, as that would deprive the plaintiff of his legal right to have the facts determined in the mode prescribed by law instead of by affidavits—a most unsatisfactory mode of eliciting truth. Indeed, the practical result in a case like this would be to dismiss the complaint upon a mere motion heard upon affidavits, without any opportunity being afforded the plaintiff to have the facts upon which he bases his claim for relief determined in the mode prescribed by law. For if in this case the injunction should be dissolved, there would be nothing to prevent the issue of bonds before the case could be heard on its merits, and if the bonds passed into the hands of innocent holders without notice, as they might and probably would do, then the controversy would become absolutely useless. If, therefore, the facts alleged in the complaint can be established upon a trial on the merits, where the witnesses can be subjected to examination and cross-examination, then we do not think it can be denied that the plaintiffs would be entitled to the injunction prayed for. The authorities cited by appellants in their argument sustain the view we have taken. 2 High on Inj. (3d Ed.), §§ 1509, 1511, and 1512; *Seabrook v. Mostowitz,* 51 S. C., 433, 29 S. E., 202.' See, also, *Oil Co. v. Ice Co.,* 62 S. C., 196, 40 S. E., 169."

I am inclined to agree with the view of Mr. Justice Cothran expressed in another case, somewhat similar to the one at bar, when he used this language: "It appearing that the action is for the sole purpose of an injunction and that a temporary injunction, that is, an injunction *pendente lite,* is essential to the assertion and preservation of a legal right, if established as alleged in the complaint, it follows that the refusal of such injunction was error of law. [Citing cases.]" *Atlantic C. L. Railroad Co. v. Baker,* 134 S. C., 106, 131 S. E., 678, 681. See, also, the recent case of *Cooke v. State Highway Department,* 155 S. C., 63, 155 S. E., 228, where we refused to interfere with the order of the Circuit Judge granting a temporary injunction, for the reason that the plaintiff made a *prima facie* showing which entitled her to such injunction, pending a determination of the cause on its merits.

The cases of *Hutchison v. York County,* 86 S. C., 396, 68 S. E., 577, 578, and *Emerson v. Kaminski,* 143 S. C., 36, 141 S. E., 108, cited by Mr. Justice Cothran in support of his view on the question of "necessity," do not conflict with the view I hold. If they have any direct, or indirect, bearing on the question I am discussing, it is my opinion that they sustain the position I take. I refer to them briefly.

In the *Hutchison case,* plaintiff sought to restrain a board of county commissioners from proceeding to condemn a right-of-way over her land for the purpose of constructing a public highway. The application for an injunction *pendente lite* was refused by Hon. Ernest Moore, then acting as special Judge. The opinion of the Supreme Court adopted the reasoning of the decree of the special Circuit Judge, wherein the injunction prayed for was refused. But Chief Justice Jones, speaking for this Court, was careful to distinguish between the rights and powers of "a mere *quasi*-public corporation, organized for private gain" (and such is the defendant in this case) and a "strictly public corporation," such as a county. The distinguished Chief Justice,

referring to what had been held in *Riley v. Union Station*
(second appeal), 71 S. C., 482, 51 S. E., 485; 110 Am. St.
Rep., 579, said this:

"From this it appears that in order to prevent a mere
*quasi*-public corporation, organized for private gain, au-
thorized by law to condemn land, from proceeding to con-
demn what it decides to be necessary, it must be shown that
there was abuse of discretion or bad faith in the location and
selection of property to be condemned.

"But we are dealing now with a strictly public corpora-
tion which seeks merely an easement over plaintiff's land for
strictly public use. The danger of oppression or spoliation
of private property for gain is very slight, if any. Hence
there is greater reason in this case to require a showing
that the public officers are about to abuse their discretion
or act in bad faith, or oppressively, in changing the location
of the old road.

"The statute, Section 1343, Civ. Code 1902, as well as
Act Feb. 26, 1902 (23 St. at Large, page 998), authorizes
the County Board of Commissioners to 'open new public
roads and widen or change the location of old public roads
where, in their judgment, such change would be for the
material interests of the traveling public. They may obtain
the right-of-way by gift or purchase, or they may condemn
the land therefor and assess the compensation and damages
therefor as hereinafter provided.'

"The statute thus plainly confides the matter of deter-
mining the necessity for the new road or alteration of the
old road to the judgment and discretion of the Commis-
sioners, and the complaint shows that the commissioners
have determined that the proposed change in the old road
will be material for the interests of the traveling public."

The appeal in the *Emerson case* was from an order of
Circuit Judge Shipp dismissing a temporary restraining
order which enjoined a Board of County Commissioners
from condemning a right-of-way over certain lands. Upon

the authority of the *Hutchison case, supra,* and another case along that line, Judge Shipp concluded the temporary injunction should be dissolved. This Court affirmed his order.

The granting or refusing of a temporary injunction, as held by this Court upon numerous occasions, is largely within the discretion of the Circuit Judge hearing the cause; and, if the Circuit Judge holds that the temporary injunction should be granted, to protect the rights of the parties pending a hearing on the merits, this Court will rarely interfere with the exercise of the discretion allowed a Circuit Judge, under the law, and especially so when his holding was based on facts. In both the *Hutchison* and *Emerson cases,* the Judge's discretion was exercised against the injunction. Here, Judge Wilson, in the exercise of his discretion, granted the injunction on the *prima facie* showing made. His order did not state the reasons for his action. We must assume, however, that he based it upon the showing of the plaintiff that there was no "reasonable necessity" for his lands to be taken, if there was a *prima facie* showing to that effect, and the record before us discloses that there was.

Neither do I think that the statutes referred to by Mr. Justice Cothran (Sections 5015-5024, Vol. 3, Code 1922) are broad enough to make the defendant here practically the sole judge of the "reasonable necessity" for the taking of lands for its purposes, as I apprehend the distinguished Justice holds. If they are construed to have that meaning, the construction would run afoul with the constitutional provision as to taking the property of a citizen without due process of law. These statutes confer the right of eminent domain upon certain public service corporations, but that right is to be exercised only according to "the law of the land." "The law of the land," as shown by the decisions of this Court to which I have called attention, gives the citizen the right to have the question of "reasonable necessity,"

when a corporation seeks to take his property for its purposes for private gain, passed upon by the Courts of justice. If a citizen has the doors of our Courts shut in his face because a powerful corporation is holding the key to the lock, under some statutory enactment, that enactment must give way, for the citizen, just as the corporation, has left yet some rights under our Constitution. The right of the citizen must be passed upon by the Courts in the proper manner. He is entitled to a full hearing. Given that, if he is right and the corporation wrong, let the law protect the citizen's right. If the full hearing shows the citizen wrong and the corporation right, let the corporation have its judgment, and let the citizen have at least the reflection that the Courts of his country gave him a hearing.

There are numerous other authorities in our State not necessary to cite here to sustain the right of the plaintiff, under the showing he has made, to have this case, on the question of "reasonable necessity," submitted to the Court for proper determination.

I can conceive of a case where this Court, on appeal, might hold that a plaintiff has made no showing whatever entitling him to an injunction *pendente lite*. But this, under the affidavits submitted to the Circuit Judge, does not come within that conception. I prefer not to enter upon a discussion of the facts as disclosed in the affidavits of the parties on the question of "reasonable necessity." If my view that the interlocutory injunction should be upheld, pending a full hearing on the merits, meets with the approval of a majority of the Court, the case may come back to this Court on appeal, after a full hearing in the lower Court, and I desire to be as open-minded as possible, if I am required hereafter to make a determination as to all the facts of the case. At this time, I may properly say this much: That beautiful, stately, and protecting shade trees, around and about the home of a citizen should not be wantonly destroyed for even the great object of building a

power line, unless it clearly appears that the law of "reasonable necessity" demands such destruction. A man oftentimes may more easily replace his dwelling house than he can the shade trees which protect that dwelling from the heat of the day.

A majority of the Court agreeing with the views expressed in this opinion, it is adjudged that the order appealed from be affirmed.

Messrs. Justices Stabler and Carter and Mr. Acting Associate Justice Graydon concur.

Mr. Justice Cothran (dissenting) : This is an appeal from an interlocutory order of injunction, granted by his Honor, Judge Wilson, in an action by the plaintiff, Seabrook, for a permanent injunction to prevent the consummation of condemnation proceedings instituted by the defendant Carolina Power & Light Company, under which it seeks to acquire a right-of-way for an electric transmission line over the land of plaintiff.

On December 7, 1929, the Carolina Power & Light Company, proceeding under Section 4990 *et seq.,* Vol. 3, Code 1922, served upon Seabrook a notice declaring that it was a public service corporation under the laws of North Carolina and duly domesticated under the laws of this State, with the right, power, and privilege and authority to construct and maintain transmission and power lines in said State for the distribution and sale to the public of electric light, heat and power, together with the right, power and privilege to acquire by purchase or condemnation proceedings all lands, easements, and rights-of-way which may be required for the construction, operation and maintenance of said lines, wires, poles, etc., and all other useful structures in connection therewith, and required for its public and corporate purposes a right-of-way across a certain tract of land owned by him and described in the notice; requiring the owner to signify his refusal or consent within thirty days.

On January 4, 1930, Seabrook instituted the action for injunction above described, denying the right of the Carolina Power & Light Company to condemnation upon the various grounds which will be considered.

At the same time the plaintiff obtained from his Honor, Judge Wilson, a rule requiring the Carolina Power & Light Company to show cause before him upon a date named why it should not be enjoined from prosecuting the condemnation proceedings, and instituted an order enjoining the company from proceeding with the condemnation in the meantime.

On January 18th, the return day of the rule, the company made its return thereto and filed its answer to the complaint, along with certain affidavits, maps, and diagrams which were opposed by counter affidavits.

Upon consideration of the matter, his Honor, Judge Wilson, on February 14, 1930, passed an order continuing the temporary injunction until the cause could be heard upon its merits, requiring a bond of the plaintiff.

From this order the Company has appealed to this Court.

The following principles have been established by the decisions of this Court:

One whose property is sought to be taken by a condemnation proceeding under the statute has the choice of two courses of action open to him:

(a) To consent to the taking and insist upon the compensation therefor under Section 4993, to be ascertained by the verdict of a jury impaneled by the Clerk of Court, in the first instance, subject to appeal by either party to the Court of Common Pleas, where the issue will be determined by a jury in that Court.

(b) To contest the right to condemn by an independent action in the Court of Common Pleas, in equity. *Columbia Water Co. v. Nunamaker,* 73 S. C., 554, 53 S. E., 996; *Riley v. Union Station,* 67 S. C., 93, 45 S. E., 149; *South Carolina Western Ry. v. Ellen,* 95 S. C., 72, 78 S. E., 963,

Ann. Cas., 1915-B, 1042; *Seaboard Air Line Ry. v. R. R.*, 88 S. C., 478, 71 S. E., 39; *Georgia, C. & N. Ry. v. Ridlehuber*, 38 S. C., 315, 316, 318, 17 S. E., 24; *Lexington Water Power Co. v. Wingard*, 150 S. C., 432, 433, 148 S. E., 366, 370, 371; *Town of Greenwood v. Yoe*, 89 S. C., 24, 71 S. E., 238.

The plaintiff has adopted the second course stated above; he denies the right of the company to condemn his property and acquire an easement of right-of-way therein, and seeks an injunction to stop the condemnation proceeding.

The complaint sets forth the grounds of his objection:

1. That the statute under which the company claims the right of condemnation is unconstitutional.

2. That the consummation of the company's purpose will cause irreparable damage to the plaintiff's property.

3. That the proposed location of the company's power line over the land of the plaintiff is unnecessary.

4. That the line is ostensibly being constructed for the purpose of obtaining power from a development on the Saluda River approximately twelve miles west of Columbia. There is no power being generated or transmitted from said dam; there is no machinery or provision for doing so; and, as plaintiff is informed and believes, there will not be any power generated at said place for many months. It is altogether problematic whether there will ever be or can be any power generated at the said Saluda Dam.

5. That the said power, when, if ever, it is generated and transmitted, is being procured by said defendant power company and transmitted for use beyond the limits of the State of South Carolina.

6. That the defendant power company is threatening to proceed with and condemn the property of the plaintiff and its proposed easements therein and thereover without first offering or tendering to the said plaintiff just or reasonable compensation therefor, contrary to the Constitution and laws of the State of South Carolina.

7. That the plaintiff, a duly appointed officer of the United States Government, is exempt from service of civil process of the nature of the notice served upon him and is immune from attendance upon the proposed litigation and assessment of his property during said service.

I. *The Constitutionality of the Condemnation Statute.*—The objections of the plaintiff to the constitutionality of the statute are thus detailed:

"(a) The only qualification for jurors provided therein, that is in Section 4991, is that they shall be disinterested freeholders;

"(b) The verdict of the jury empanelled and rendered in such action is binding only on the landowner; is not binding upon the condemnor, and constitutes merely an option at which the condemnor may take as and when he chooses the property, and in the meantime the landowner is deprived of and unable to exercise the rights of an owner;

"(c) The said statutes undertake to give to the condemnor the right to appeal from any verdict, depositing but not paying to the landowner the amount of the verdict with the Clerk and during the pendency of the appeal, which may be delayed indefinitely, and to take possession and use the lands and easements desired without even furnishing and providing any security for an increased assessment;

"All of which constitutes a taking of the property and property rights of the plaintiff without just compensation and before just compensation is paid; is a denial to the plaintiff of the equal protection of the law and of due process of law, in violation of the various provisions of the Constitution and laws of the State of South Carolina in regard thereto, and the Constitution of the United States."

(a) The respondent contends that Section 4991 of the Code is unconstitutional, in that the only qualification for jurors therein provided, is that they shall be disinterested freeholders. We think it is sufficient to say in this connection that the section referred to does not provide that jurors

shall not possess other qualifications prescribed by the Constitution and statutes of this State, but requires that, in addition to such other qualifications, they shall be disinterested freeholders. The manifest reason for this is that they are to appraise lands and assess damages for injuries to lands. It is, therefore, clear that there is no inconsistency between said section and any provision of the Constitution prescribing the qualifications of jurors.

(b) In the case of *Haig v. Water Power Co.*, 119 S. C., 319, 112 S. E., 55, 59, the plaintiff complained, as in this case, that the verdict of the condemnation jury is binding only on the landowner and is not binding upon the condemnor and constitutes merely an option under which the condemnor may take the property as and when he chooses, and, in the meantime, the landowner is deprived of and unable to exercise the rights of an owner. Honorable I. H. Hunt, Acting Associate Justice, speaking for the Court, said:

"The case at bar was brought under the condemnation statute. The verdict of the jury fixed the value of the future right to flood certain lands of the condemnee. No damage had been done, and no right of the landowner had been invaded. It was optional with the condemnor whether it would take the land at its assessed value or decline to do so. Until the land was actually taken, no obligation rested upon the condemnor to pay the award fixed by the jury. No title vested until payment of the award. There could be no final determination of the rights of the parties in the action so long as the taking of the property, payment of the award, and vesting of the right was optional with either party. 'The act of condemnation is not complete until the damages assessed have been paid or tendered.' Corpus Juris, Vol. 20, page 1082. If the condemnor had elected not to take the property, the judgment could not have been enforced, as the landowners' right to compensation had not vested. "The general rule is, the condemnation proceedings may be dis-

missed, or abandoned, at any time before, but not after, the landowner's right to compensation has become vested.' Corpus Juris, Vol. 20, page 1079.

"In the case at bar, the verdict was rendered on the 7th day of March, 1918, and the landowners' right to compensation did not vest until the condemnor elected to take the property on the 3d day of February, 1919. Until that time there was no final determination of the rights of the parties. Section 304 of the Code of Laws of South Carolina defines a judgment to be 'the final determination of the rights of the parties in the action.'

"The rule that the landowner is obliged to sell, and the condemnor is not required to take, is an apparent inequality of justice; yet such is the law in this and other states where the statutes have not otherwise provided."

(c) In the case of *Lexington Water Power Co. v. Wingard,* 150 S. C., 418, 148 S. E., 366, the Court held that the Clerk's jury organized as a special statutory tribunal for the ascertainment of compensation in eminent domain proceedings under the provisions of Section 4990, *et seq.,* of Volume 3 of the Code, constitutes a lawful jury of a Court of record; that the condemnor need not actually pay compensation to the property owner before entering on his lands if the payment of compensation is secured by a deposit of money and that upon making such deposit the condemnor had the legal right to enter into possession and proceed with the construction of the dam pending an appeal to the Circuit Court, over the objections of the landowners.

It appears that the questions thus presented by the respondent have been decided adversely to his contention by this Court in the cases of *Lexington Water Power Co. v. Wingard et al.,* 150 S. C., 418, 148 S. E., 366; *Haig v. Wateree Power Co.,* 119 S. C., 319, 112 S. E., 55; *Riley v. Charleston Union Station Co.,* 71 S. C., 457, 51 S. E., 485, 110 Am. St. Rep., 579; *Atlantic Coast Line Railroad Co. v. South Bound Railroad Co.,* 57 S. C., 317, 35 S. E., 553;

*South Carolina W. Railway Co. v. Ellen,* 95 S. C., 68, 78 S. E., 963, Ann. Cas., 1915-B, 1042; *Paris Mountain Water Co. v. City of Greenville,* 110 S. C., 36, 96 S. E., 545, 551; *Evans v. Town of Edgefield,* 139 S. C., 36, 137 S. E., 208.

In the case of *Paris Mountain Water Co. v. City of Greenville, supra,* it was contended "that the railroad condemnation statutes are unconstitutional, not because they deny due process of law, but because they permit the taking of the property, not only 'without just compensation being first made therefor,' but before just compensation has even been judicially determined." The Court said: "To sustain this postulate counsel relies on *Railway v. Ellen,* 95 S. C., 68, 78 S. E., 963, Ann. Cas., 1915-B, 1042. The statute prescribing the manner by which lands of persons may be taken for the construction of railways was enacted in 1868, 14 Stats., 89. And the question now made is raised after a half century's administration of that statute. That reflection is sufficient to throw more than a doubt upon the soundness of the appellant's contention. There are two provisions in the Constitution on the subject, one in the Declaration of Rights (Section 17) and the other in the Article on Corporations (Section 20). The Act under consideration (29 Stats., 940) refers to the latter. For authority appellants rely on Lewis on Eminent Domain, and cases from Dakota, California, and Pennnslyvania, construing the Constitution of those states. Those authorities make a literal construction of the Constitution as against a reasonable construction which we make. We rest the case on *Railroad v. Ellen, supra.* The Court *en banc* there sustained the statute in its cardinal features, and that included of necessity the right of the condemnor to make compensation in the time and method prescribed by the statute, though so much was not said."

II. *Irreparable Damage.*—As said by Mr. Justice Woods, speaking for this Court in the case of *Childs v. City of Columbia,* 87 S. C., 566, 70 S. E., 296, 297, 34 L. R. A. (N. S.), 542: "The right to an injunction does not arise

merely because the plaintiff asks for injunction and nothing more, nor because the plaintiff alleges that without the injunction he would suffer irreparable injury. This results from the truism that all judicial action is taken on the conviction of the Judge as to the rights of the parties, and not on the opinion of the parties themselves as to their rights. Hence there are two essential conditions to the granting of even temporary injunctions: First, the complaint must allege facts which appear to be sufficient to constitute a cause of action for injunction; and, second, on the entire showing from both sides it must appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation. *Alderman v. Wilson,* .69 S. C., 159, 48 S. E., 85; *Northrop v. Simpson,* 69 S. C., 554, 48 S. E., 613; *Marion C. L. Co. v. Tilghman L. Co.,* 75 S. C., 221, 55 S. E., 337; *Boyd v. Trexler,* 84 S. C., 51, 65 S. E., 936; *Kelly v. Tiner,* 86 S. C., 160, 68 S. E., 465."

"Courts do not enjoin the construction or use of public utilities and improvements at the suit of private individuals unless the damage is both serious in amount and irreparable in character." 14 R. C. L., page 346, Section 47.

In this connection see, also, *Tallevast v. Kaminski et al.,* 146 S. C., 225, 143 S. E., 796.

"An injury to be irreparable need not be such as to render its repair physically impossible; but it is irreparable when it cannot be adequately compensated in damages, or where there exists no certain pecuniary standard for the measurement of the damages." 32 C. J., page 53, Section 31.

Let us inquire whether the allegations in the respondent's complaint and his affidavits and exhibits fulfill the requirements above set forth.

It is neither impossible nor difficult to ascertain the damages that would result from the construction, operation, and maintenance of the appellant's power line on the respondent's

premises. There are standards by which such damages can be accurately measured.

The respondent alleges that his dwelling is situate néar the center of a tract of ninety-five acres of land over which the right-of-way is sought by the appellant and "is surrounded by ancient, stately shade oaks and other shade and ornamental trees, contributing to, essential and necessary to the comfort and attractiveness of said place as a home and homestead" and "that if said defendant, Carolina Power & Light Company, is allowed to carry out its threat, it will cut, injure and destroy much of the most valuable, essential and necessary shade and ornamental trees; it will render the use and occupancy of said home and homestead dangerous and undesirable, and will unnecessarily spoil and destroy the same."

It is not denied that the minimum distance between the respondent's dwelling and the location of the proposed power line is approximately two hundred yards. It is, therefore, unbelievable that the maintenance of the power line over his premises would render the use and occupancy of his home dangerous and undesirable. In every city, town, and village where electric energy is used, all residents, and especially pedestrians and other travelers upon the streets, are constantly in much closer proximity to transmission lines carrying electricity of high voltage, and many millions of people constantly pass directly under such transmission lines and in close proximity thereto. If the extremely remote danger of injuries from a power line so located is a sufficient ground for enjoining the construction, operation, and maintenance of the same, all such lines would have to be abandoned. Indeed, it would be impossible to locate the line in places so remote that some one would not be exposed to the danger of which the respondent complains.

The cutting and removal of trees at a distance of approximately two hundred yards from the respondent's dwelling and not between the same and the public highway

and not in front of the dwelling will not materially affect the value of his property; but even if such trees were very valuable and if the market value of the property would be materially reduced by the cutting and removal of the same, such injuries are susceptible of compensation in damages. The appellant and respondent differ widely as to the amount of the compensation to which the latter is entitled. We do not seek, and the law would not permit us, to determine how much the respondent will be damaged. The company is merely asking that a jury of disinterested residents of Sumter County shall inspect the premises and ascertain and determine what amount the power and light company shall pay as full compensation for its right-of-way. The respondent, on the other hand, demands that his price must be paid, or that the power line must be located elsewhere, and he has made no objection to the location of the power line that might not be made by many other owners of lands to be occupied by the transmission line in question and by the innumerable other transmission lines that are now supplying and will hereafter supple electric energy to the people of this State. The nature of the respondent's alleged injuries is not unusual or extraordinary. He can be fully compensated in damages and has so admitted by offering to sell the right-of-way desired for a price that he stipulates, which the appellant regards as so grossly excessive as to be prohibitive. The respondent admits in his affidavit "that an offer to sell a right-of-way was made by plaintiff to defendant; but only before plaintiff had reached the conclusion, after investigation, that the defendant could not condemn plaintiff's land."

The respondent also submitted numerous affidavits in which the deponents testify that the construction of the proposed power line across his property would result in such injury thereto as to cause a depreciation of one-third or more in value, thereby impliedly admitting that compensation in damages to the extent of one-third or more of the value of the property would repair the injuries complained of.

The rights, both of the appellant and the respondent, are subordinate to the public interest. Neither will be permitted to exercise its rights arbitrarily or oppressively. Where they are unable to agree, the law provides for the assessment of damages by a disinterested jury, and, if the award of the jury is not acceptable to either party, the case may be tried *de novo* in the Court of Common Pleas of Sumter County, from which an appeal to the Supreme Court is permitted. If the extent of the injuries to the respondent's property is so great that compensation equal to the entire market value thereof would be just, it must be assumed that the jury will award such compensation.

In the case of *Haig et al. v. Wateree Power Co.*, 119 S. C., 319, 112 S. E., 55, 57, this Court said: "That right [of eminent domain] is based upon the theory that when the State originally granted lands to individuals the grant was made under the implied condition that the State might resume dominion over the property whenever the interest of the public or welfare of the State made it necessary. Its origin antedates constitutional provisions and legislative enactments. It is one of the unwritten laws of all civilized nations. It is justified by the fact that the right of individuals must yield to the public good, and the welfare of the State is paramount to that of the individual citizen. * * * While there is nothing in the nature of a contract between the landowner and the State, or the corporation to which the power is delegated, it is in effect a compulsory sale with the compensation fixed in a fair and impartial manner."

Remembering that the respondent admits that he offered to sell the appellant a right-of-way over his land, the case of *Evans v. Town of Edgefield*, 139 S. C., 36, 137 S. E., 208, 209, is directly in point here. In that case the Court said: "It is a well-established principle and rule that, where one has a full and adequate remedy at law, equity will not interfere; and I hold in this case that the plaintiff has a full and complete remedy at law as provided by the statutes. The plain-

tiff in her complaint admits that she has made an offer of sale of her premises, as set out in the notice. This being so, it appears that the statute provides a clear and expeditious manner of determining the value, and equity will not interfere where such a method is provided by law."

. 3. *Necessity.*—The respondent further contends that "the proposed location in and over the premises of the plaintiff is unnecessary; the purpose of the said defendant can be carried out without constructing its line over the lands of this plaintiff, and without trespassing on the lands of the plaintiff and irreparably injuring and destroying his property; and by the exercise of reasonable care and prudence the said defendant can easily detour its proposed line."

In the first place the question of necessity is generally not to be decided upon the circumstances of the particular location of the power line under consideration, but upon the broad issue whether the construction of any power line is such a public use as creates a necessity and justifies conferring the exercise of the power of eminent domain. That has already been determined by the legislative department of our government in Section 5024, Volume 3, Code.

As said in 2 Nichols Em. Dom. (2d Ed.), page 908: "Just as it is exclusively within the power of the Legislature, except so far as it is limited by the provisions of the Constitution, to decide what police regulations shall be enacted, what taxes shall be levied and what the duties of the various public officers shall be, so it is within the execlusive jurisdiction of the same body to determine what public improvements shall be constructed, where they shall be located, and whether the power of eminent domain shall be employed to acquire the necessary site. When the Legislature authorizes the exercise of eminent domain in a particular case it has necessarily adjudicated that the land to be taken is needed for the public use, and no other or further adjudication is necessary. When the legislature has made its decision and has authorized the taking of land by eminent domain the

owner has no constitutional right to have this decision re-
viewed in judicial proceedings or to be heard by a Court on
the question whether the public improvement for which it is
taken is required by public necessity and convenience, or
whether it is necessary or expedient that his land be taken
for such improvement, unless the public use alleged for the
taking is a mere pretense. * * * This rule is some-
times stated in other forms, as that such questions are polit-
ical, not judicial; or that the judicial function is exhausted
when the use is declared public, and the extent to which prop-
erty shall be taken rests in the discretion of the Legislature.
* * * The real reason of the rule is simple enough; the
Courts have no power to revise any enactment of the Legis-
lature unless it violates some clause of the Constitution. The
constitutions of the great majority of the states contain no
provision prohibiting the taking of land for public use ex-
cept for necessary or economically expedient undertakings,
or unless the work can be done in no other way, nor was it
the practice when the State Constitutions were adopted to
require a judicial hearing upon the question of necessity in
eminent domain cases, so that it can be plausibly argued that
such a hearing is essential to due process of law."

"The adjudicated cases likewise establish the proposition
that, while the Courts have power to determine whether the
use for which private property is authorized by the Legisla-
ture to be taken is in fact a public use, yet, if this question is
decided in the affirmative, the judicial function is exhausted;
that the extent to which such property shall be taken for
such use rests wholly in the legislative discretion, subject
only to the restraint that just compensation must be made."
*Shoemaker v. U. S.*, 147 U. S., 282, 13 S. Ct., 361, 390, 37
L. Ed., 170.

In 2 Nichols, page 915, it is said: "So also the Legislature
may delegate to municipal or private corporations the right
to determine what public improvements they will construct
and to take by eminent domain the land required for such

improvements, and the decisions of such corporations upon the utility and necessity of the improvements which they decide to construct cannot be questioned in the Courts, except in a plain case of abuse. Similarly, when it has been decided that a public improvement shall be constructed, whether the power of eminent domain shall be invoked is not a matter for judicial determination. The owner of the land which it has been decided to take is not entitled to be heard upon the question whether an equally available site was not already in possession of the public, or could be bought elsewhere for less than the fair value of his land," citing many authorities.

See, also, 2 Lewis Em. Domain (3d Ed.), 601.

There is an exception to this rule which is clearly stated by Mr. Nichols, at page 909: "There is, however, at least a theoretical limit beyond which the Legislature cannot go. The expediency of constructing a particular public improvement and the extent of the public necessity therefor are clearly not judicial questions; but it is obvious that, if property is taken in ostensible behalf of a public improvement which it can never by any possibility serve, it is being taken for a use that is not public, and the owner's constitutional rights call for protection by the Courts. * * * It being settled that, while necessity is not primarily a judicial question, there may be such absolute lack of necessity as to render the proceedings void, it necessarily follows that an owner who alleges such lack of necessity is entitled to have the question passed upon by a judicial tribunal."

As in the case of *South Carolina R. Co. v. Blake,* 9 Rich., 228, where the arbitrary exercise by the railroad company of the claim to condemn a piece of property which it did not need for railroad purposes was enjoined; a claim made ostensibly under its granted power of eminent domain, but manifestly without semblance of right.

And in *Riley v. Charleston Union Station Co.,* 71 S. C., 457, 51 S. E., 485, 497, 110 Am. St. Rep., 579, the Court quoted with approval the following from *Smith v. R. Co.,*

105 Ill., 511: "Every company seeking to condemn land for public improvement must, in a modified degree, be permitted to judge for itself as to what amount is necessary for such purpose"; the Court adding: "This right, however, is subordinate to the right of the Courts to prevent an abuse of the power by restricting its exercise to the reasonable necessities of the case, since to take more than reasonable necessity requires is to appropriate private property to private use."

But assuming that the Court may entertain the issue whether there is a necessity for the taking in this particular instance, the plaintiff has made no allegation which would bring the case within the exception referred to. All that he says tending to show that the proposed location over his land is unnecessary is that the construction of the proposed line can be accomplished without going upon his land; that the defendant "could easily detour its proposed line," an objection that any landowner could make; if sustained it would be impossible to construct a line at all; any landowner upon whom the line was shifted under the plaintiff's objection could horn the defendant over upon someone else's land and he do the same thing.

As the appellant has alleged in its answer and shown by the affidavit of W. T. Heywood, an engineer, which is not controverted, rights-of-way have been acquired up to the respondent's property line on both sides of his land, and poles have been erected thereon upon which wires are about to be suspended and a transmission line around his premises connecting the termini of said rights-of-way would necessarily be constructed with several sharp angles and would be inherently weak and insecure and would be more dangerous and more costly than a line directly across his premises. The only other alternative would be to abandon costly rights-of-way heretofore acquired for long distances on both sides of the respondent's premises and to construct a line in a wide detour around his land which would involve the loss of

rights-of-way already paid for, the purchase of additional rights-of-way for long distances and the construction of a transmission line, which is very costly, for several times the distance across the respondent's premises, all of which is entirely unnecessary for the reason that he can and will be adequately compensated in damages by the verdict of a disinterested jury.

"The fact that there is other land in the community which seems to be more convenient for the use in question, and the taking of which would entail less damage, is not a sufficient reason for interfering with the taking of sertain lands by the company." 10 A. and E. Enc. of Law, 1057.

"In general, if there appears to be no bad faith on the part of the grantee in the matter of location, his discretion will not be interfered with." A. and E. Enc. of Law, 1057.

In the case of *Riley v. Charleston Union Station Co.,* 71 S. C., 457, 51 S. E., 485, 498, 110 Am. St. Rep., 579, it was contended that the plaintiff's land should not be taken because the railroad companies that owned the greater portion of the stock of the Union Station Company had lands of their own in the city of Charleston upon which the Union Station might be located. The Supreme Court held that it was no abuse of discretion on the part of the Union Station Company to condemn certain property adapted for its purpose, without attempting to use property belonging to certain of its stockholders which might be adapted to the same purpose. The Court said: "We find no abuse of discretion or bad faith in defendant's proposal to condemn plaintiff's property, and the general rule is that, if there be no bad faith or abuse of discretion on the part of the grantee in the matter of location, his discretion will not be interferred with."

The reasoning of the Court touching a similar question in the case of *Hutchison v. York County et al.,* 86 S. C., 396, 68 S. E., 577, is summarzied in the syllabus as follows: "There was no allegation showing abuse of discretion, bad faith, or oppression, and there was nothing to show that the

commissioners did not in good faith consider and determine the matter with a view to the material interests of the general traveling public, nor was there anything to show that the laying out and constructing of the new road would entail irreparable damage to plaintiff's land. *Held,* that the statute confides the matter of determining the necessity for the new road to the judgment and discretion of the commissioners, and an injunction was properly denied."

In that case the Court said: "From this [referring to *Riley v. Union Station Company*] it appears that in order to prevent a mere *quasi* public corporation, organized for private gain, authorized by law to condemn land, from proceeding to condemn what it decides to be necessary, it must be shown that there was abuse of discretion or bad faith in the location and selection of property to be condemned."

In the case of *Emerson v. Kaminski et al.,* 143 S. C., 36, 141 S. E., 108, 112, where there was an appeal from an order refusing an application for a temporary injunction, the Court said: "The authority of the defendants to institute condemnation proceedings for the purpose of procuring a right-of-way over and through plaintiff's lands for the proposed highway is not questioned. Neither is there any irregularity in such proceedings shown or alleged; and, after a careful examination of the record in the case, we are unable to find support for the allegations of abuse of discretion, bad faith, oppression, and illegality on the part of the defendants with respect to the necessity or location of the proposed road. Further, it is plain that the plaintiff has an adequate remedy at law for the alleged injury and any damages he may sustain."

For the reasons stated, the order of the Circuit Judge refusing a temporary injunction was affirmed.

The principles by which the Courts are guided in cases of this kind are well stated in the case of *New York Central Railroad Co. v. Metropolitan Gas Light Co.,* 5 Hun. (N. Y.), 201, where the Court said: "Upon the point, that the lands

proposed to be taken are not necessary, because it might be practicable for the respondents to lay their tracks upon their own lands by adopting another curve, we are not prepared to concur with the appellants' counsel. It is not a question of possibilities nor of strict practicabilities within the opinion of engineers. No route was ever surveyed for a railroad which was not open to such objections, and if the right to take lands was to be determined by conflicting evidence, whether, after all, the tracts might not, with greater or equal convenience, be laid elsewhere, the construction of a road would be attended with the most serious embarrassments. Reasonable necessity must be shown, but a reasonable discretion must be allowed to the officers who locate the tracks of a railroad, for it cannot be presumed that the corporation is unnecessarily incurring heavy expenses in obtaining lands, when those it already has would answer its purposes."

IV. The respondent further objects to the construction of the power line upon his premises, for the reason that no power is now being generated and none will be generated at the development on the Saluda River for several months, and that it is "problematical whether there will ever be or can be any power generated at the said Saluda Dam."

The answer to this contention is sufficiently stated in the appellant's answer and return to the rule heretofore issued in this cause. There is not the slightest doubt that electric energy will be generated by the power plant on the Saluda river in the very near future. Many millions of dollars have already been spent, and other millions will be spent for that purpose. It would be folly to assume that such an erroneous investment will be abandoned. The appellant has contracted to receive and pay for about one-half of the power to be generated there on and after July 1, 1930, and it cannot wait until that time to construct its transmission line, as the respondent seems to contend that it should.

V. It is further alleged by the respondent and denied by appellant that "said power, when, if ever, it is generated and

transmitted, is being procured by said defendant power company and transmitted for use beyond the limits of the State of South Carolina."

For the same reason that it is more expensive for a railroad company to transport freight and passengers for long distances than for short distances, it is more expensive to transmit electric energy for long distances than for short distances. It is, therefore, obvious that electric energy obtained by the appellant from Lexington Water Power Company will be used as near as practicable to the source of supply. It will be used throughout eastern South Carolina, and the surplus, if any, will be used in North Carolina. It is quite probable that all the current purchased by this company from Lexington Water Power Company will be ultimately used in this State, but, even if that were not true, and if the greater part of said power were to be presently or in the future used elsewhere, that would not be a valid objection to the condemnation of the right-of-way in question. *Grover Irrigation & Land Co. v. Lovella Ditch, etc., Co.,* 21 Wyo., 204, 131-P., 43, L. R. A., 1916-C, 1275, Ann. Cas., 1915-D, 1207; *Gilmar v. Lime Point,* 18 Cal., 229; *Washington Water Power Co., v. Waters,* 19 Idaho, 595, 115-P., 682; *Columbus Waterworks Co. v. Long,* 121 Ala., 245, 25 So., 702; *In re Townsend,* 39 N. Y., 171.

"If the particular improvement or use will be of sufficient benefit to the people of the State to authorize an exercise of the power, it will not be prevented by the fact that the people of another State will also be benefited." 20 C. J., 553.

VI. The plaintiff contends that the defendant has not shown a *bona fide* effort on its part to agree with the plaintiff upon the terms of a taking of his property, and that such is a condition precedent to the institution of condemnation proceedings.

The defendant has shown satisfactorily that the demand of the plaintiff for damages was so unreasonable as to pretermit the possibility of an agreement with him, which shows

a compliance with the requirement if it should be held to exist. The plaintiff, however, is not in a position to claim the failure of such effort when he attacks by this injunction proceeding the legal right of the defendant to condemnation.

In 2 Nichols Em. Dom. (2d Ed.), § 379, it is said: "Although an attempt to agree with the owner when required by statute is essential to the jurisdiction, it is apparently looked upon by the Courts as a provision enacted wholly for the benefit and protection of the owner, and, like any other such provisions, even though provided by the Constitution itself, may be waived by him. It has accordingly been held that when an owner has instituted proceedings in equity to restrain a public service corporation from interfering with his property, he cannot afterwards object to the condemnation of the property by the corporation on the ground that it did not first endeavor to obtain by purchase the rights and privileges which it seeks to appropriate; and when an owner appears in the condemnation proceedings and contests them on the merits he thereby waives a failure on the part of the corporation to attempt to agree with him"— citing *U. S. v. Reed,* 56 Mo., 565; *State v. Superior Court, Chehalis County,* 48 Wash., 277, 93-P., 423, 426, 17 L. R. A. (N. S.), 1005, 125 Am. St. Rep., 927; *West Stokie v. Dawson,* 243 Ill., 175, 90 N. E., 377, 17 Ann. Cas., 776; *Hyattsville v. R. Co.,* 122 Md., 660, 90-A., 515.

In the *Chehalis case* the Court said: "There is no merit in another suggestion made by the relators that the respondent cannot condemn because it did not, prior to the commencement of these proceedings, endeavor to obtain by purchase the rights and privileges it now seeks to appropriate. The evidence shows that such endeavors were made by respondent; but, even though the contrary appeared, yet the position of the relators in this proceeding will not permit them to now present any such objection. *State ex rel. Skamania Boom Co., v. Superior Court,* 47 Wash., 166, 91-P., 637."

In *Alton R. Co. v. Vandalia R. Co., 271* Ill., 558, 111 N. E., 531, it was held that, where, from the contest and the acts of the parties, it was evident that they could not agree, the judgment condemning land will not be reversed for failure to produce direct testimony to show the inability to agree, so that, where a cross-petition is filed for damages to land not taken, and there is a contest on the merits, questions of failure to agree are waived.

In *Patterson v. Mead., 148* Mich., 659, 112 N. W., 742, it was held that, where a drainage commissioner applied to a landowner to give a right-of-way for the improvement of a ditch, and the landowner not only refused, but informed the commissioner that he would contest drainage proceedings in Court, the commissioner was not bound to make a further attempt at an agreement with him, and was justified in commencing proceedings to condemn.

VII. The plaintiff, as an officer of the United States, is of course immune from such service of process while in the discharge of his duties as would interfere therewith. As is stated in 21 R. C. L., 1308: "The immunity does not extend merely to particular individuals but to all persons under certain circumstances, on the principle that where the law requires any duty of the citizen, it will protect him in the discharge of that duty, and that individuals can not demand the use of civil process, so as to arrest or interfere with others in the performance of public duties, or of duties required by public process."

It is conceded by the plaintiff that the duties of his office "require the greater portion of his time," not his entire time. We see nothing to indicate that the service of the notice interfered in the slightest degree with the duties of his office. Evidently the contention is an afterthought, for the plaintiff received the notice without objection and had some negotiations with the company before bringing his action for injunction.

The plaintiff, therefore, not having made out in his complaint even a *prima facie* case for injunction, it follows that the Circuit Judge was in error in granting it *pendente lite,* and the order should be reversed.