14431

COUNTY BOARD OF COMMISSIONERS FOR CLARENDON COUNTY v. HOLLIDAY *ET AL.*

(189 S. E., 885)

*Mr. L. D. Jennings,* for appellants,

*Messrs. Dinkins & Stukes,* for respondent,

February 8, 1937.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

In 1887, one J. E. Tindal conveyed to the trustees of Zero Church in Clarendon County, "for the purpose of a burial ground and place of worship", eight acres of land, one of the conditions of the sale and transfer being that the property would revert to the grantor, his heirs or assigns, when no longer used for the purposes named in the deed. In 1892, one Rufus C. Lackey also sold to the trustees of this church one acre of land adjoining the eight acres purchased from

Tindal, the entire tract being dedicated and devoted to church and cemetery purposes. This land is adjacent to and borders upon a highway, known as the Manning-Paxville public road, which was in existence at and before the time the church acquired the property.

It being desired to widen a part of this road and to change a part of its location, and to otherwise improve it, the plaintiffs herein, pursuant to Section 5813 of the Code of 1932, served the defendants, on August 26, 1935, with written notice that they intended to condemn for such purposes a strip of this land as described therein; and also that they would assess compensation and damages therefor at the time and place named. A hearing of the matter was duly had, after which the plaintiffs notified the defendants that they had decided, considering the special benefits accruing to the church "by reason of the construction of the proposed road," that no damages would result or would be allowed.

From this decision, the defendants appealed to the Court of Common Pleas for Clarendon County upon the following grounds: (1) That the County Board of Commissioners was in error in holding that, on account of the special benefits accruing to appellants, no damages should be allowed; and (2) that the Board of Commissioners had no legal power or authority to condemn for public road purposes lands used for a cemetery or graveyard, and that it committed error in so holding.

A trial *de novo* as to these issues was asked for; and at such trial, had at the following spring term of the Court of Common Pleas before his Honor, Judge Greene, and a jury, testimony was offered by the plaintiffs to the effect that "there were no people buried on the strip of land sought to be condemned, and that it was only used for hitching horses and parking vehicles. That there were many graves on the eight-acre tract of land, but that there were no graves within about fifty feet of the strip of land sought to be condemned, and that the remaining unused space would always

be adequate for burial purposes. That the benefit to the property by reason of the changing of the road and the improvements to be made thereon exceeded the damage to the property. That it was necessary to have this strip of land in order to straighten the curve in the old road at this point. That if the necessary land were taken from the property on the other side of the road in front of the church, that this would make two curves in the road, and that to straighten the road at this point they would have to start much further back and change the location of the old road, and that there was a reasonable necessity for condemning said property."

Evidence for the defendants tended to show that "the strip of land sought to be condemned was a part of their graveyard property. That one or more bodies had been buried on the part sought to be condemned. That the entire eight acre tract was used for burial purposes, and that there were hundreds of graves on this eight acre tract, covering practically the entire tract. That there were tombstones to a great many of these graves. That it was not necessary to take this property, because on the opposite side of the road was an open field, and that this could be taken without interfering with the graveyard. That several trees would be destroyed. That the well would be filled up. That the widening of the road would be of no benefit to the church. That they objected to the property being taken, as it was part of their cemetery property."

At the close of the testimony, counsel for the defendants moved for a directed verdict on the ground that the proof conclusively showed that the property sought to be condemned was a part of the church cemetery, and that plaintiffs had no legal right or authority to condemn for a public highway lands. devoted to and used for burial purposes. The motion was refused; and the following questions were submitted by the Court to the jury: (1) Is a grave located on the land sought to be condemned? (2) Is there any reasonable necessity to condemn this property? (3) How much

damages will respondents sustain by having this property taken? All of these questions were answered adversely to the contentions of the defendants, who thereupon appealed to this Court from the rulings of the trial Judge, the verdict of the jury, and the judgment entered thereon. The plaintiffs also served due notice that they would ask this Court to "sustain the rulings of the presiding Judge and the judgment in the Court below upon the additional ground that to contest the right to condemn or to determine the right to institute such condemnation proceedings as the one at bar, appellants should have brought an independent action, and that said rights cannot be determined in this proceeding."

Two questions are presented for our consideration, the decision of which will dispose of the appeal: (1) Are the respondents now estopped to assert that the appellants cannot have determined in this proceeding the question raised by them in the Court below as to the legal power and authority of the County Board of Commissioners to condemn lands being used for a cemetery? (2) May lands purchased for and devoted to cemetery purposes be condemned and taken for highway purposes, and how? These we will discuss in the order named.

First. It is well settled in this jurisdiction that, "when the right to institute condemnation proceedings is contested, the proper remedy is to bring an action in the Court of Common Pleas in order that the Court may, in the exercise of its chancery powers, determine such right." *Columbia Water Power Co. v. Nunamaker*, 73 S. C., 550, 53 S. E., 996, 998, and cases there cited See, also, *Seabrook v. Carolina Power & Light Company*, 159 S. C., 1, 156 S. E., 1, where this question was fully considered.

In the case at bar, when the defendants were apprised of the fact that the plaintiffs intended to condemn a part of the lands devoted to cemetery pur-

poses, if they concluded that the condemnors were without legal power to do so, they should have, as indicated above, contested the right to condemn by an independent action in the Court of Common Pleas, in equity. They, however, did not bring such action, but, in response to the notice served upon them, participated in the condemnation proceeding instituted by the plaintiff under the statute. In this situation, the defendants improperly raised, in their appeal from the decision of the County Board of Commissioners, the question of the right and power of the plaintiffs to condemn the property, and it should have been so declared by the Court below. Undoubtedly, if the plaintiffs had made such point at the proper time, by motion or otherwise, the trial Judge would have so ruled, and would have submitted to the jury only the matter of damages or compensation. But no such point was made or ruling had with respect thereto. On the contrary, testimony was taken on the question and it went to the jury for their determination. The plaintiffs did not object to what was done, but actually acquiesced and participated therein. Furthermore, the jury found in their favor on that issue and judgment on the verdict was entered up accordingly. Under these admitted facts, the respondents are undoubtedly estopped ·to now assert that the appellants should have brought an independent action in the Court of Common Pleas, in equity, for the determination of such question, and that it could not be determined in this proceeding. See, generally, *Southern Railway Company v. Day,* 140 S. C., 388, 138 S. E., 870; 21 C. J., 1060.

Second. No decision of this Court has been cited, and we know of none, in which this question has been passed upon. Similar questions, however, have been considered and decided by other Courts, to some of which we will presently refer. It is not disputed that the cemetery with which we are here concerned, a church graveyard, is classed, in contemplation of law, as a public cemetery. See 11 C. J.,

50. Also, that the use to which lands devoted to cemetery purposes, as in the present case, is a public use; and the fact that such lands are held and used under deeds from former owners, and were not taken by proceedings in condemnation, does not affect the nature of such use. Neither is it questioned, nor can it be, that the Legislature has power, all property being held subject to the right of eminent domain, to authorize the taking of land already applied to one public use and devote it to another. In 20 C. J., 618, it is stated that "the fact that lands have previously been devoted to cemetery purposes does not place them beyond the reach of the power of eminent domain. Accordingly, cemetery lands have been appropriated for highway purposes, railroads, and the like." But the writer, in the same connection, points out that, "in the case of public cemeteries, authority to condemn must be given expressly or by necessary and reasonable implication, but private cemeteries may be taken for a public use under general legislative authority."

In *Evergreen Cemetery Association v. City of New Haven,* 43 Conn., 234, 21 Am. Rep., 643, where it was held that land already devoted to a public use cannot be taken by the public for another use which is inconsistent with the first, "without special authority from the legislature, or authority granted by necessary and reasonable implication," the Court, in its construction of a statute authorizing the city to lay out streets and highways, said: "The language is general and broad enough to embrace all lands, whether used for one purpose or another; nevertheless there are cases in which it will be presumed that the legislature intended that it should not apply. It will be presumed that land applied to one public use should not be taken and devoted to another use inconsistent with the first unless there is a necessity for it. Thus it will be presumed that the legislature did not intend to authorize a town to lay out a highway along the track of a railway, or along the bed of a canal, as the two uses cannot well exist to-

gether. The one necessarily excludes the other. So also a railroad company, unless expressly authorized, cannot lay its track upon a highway; and when permitted, except in special cases, a substitute road must be provided. * * * The same land cannot properly be used for burial lots and for a public highway at the same time. The two uses are inconsistent with each other, and the one practically excludes the other."

To the same effect was the holding in the later case of *Starr Burying Ground Association v. North Lane Cemetery Association,* 77 Conn., 83, 58 A., 467, 469, where it was said: "Land held and used for a public use, when needed for a different or inconsistent public use, may be condemned for the latter use; but a statute authorizing the condemnation of land will not be construed as applying to land already devoted to public use, unless such application is clearly covered by the statute."

In *Memphis State Line R. Co. v. Forest Hill Cemetery Co.,* 116 Tenn., 400, 94 S. W., 69, 73, will be found a discussion of the question. After referring to the statute providing generally for condemnation, and to the provisions of certain special statutes with respect to cemeteries, the Court had this to say: "In the face of these provisions, can it be supposed that the Legislature, when they used the general language employed in our statute of eminent domain, intended that that statute should apply to such places? We think not. True it is the dead must give place to the living. In process of time their sepulchers are made the seats of cities, and are traversed by streets, and daily trodden by the feet of man. This is inevitable in the course of ages. But while these places are yet within the memory and under the active care of the living, which they are still devoted to pious uses, they are sacred, and we cannot suppose that the Legislature intended that they should be violated, in the absence of special provisions upon the subject, authorizing such invasion, and indicating a method for the disinter-

ment, removal, and reinterment of the bodies buried, and directing how the expense thereof shall be borne."

Further citation of authority is unnecessary. Upon full consideration of the matter, we think that the conclusions reached in the cases above cited, with respect to this question, are sound; and that authority to condemn lands already dedicated to a public use, lands devoted to cemetery purposes being an example, must be given expressly or by necessary and reasonable implication. It is not claimed by the respondents here that they were expressly authorized to condemn, as was done, the strip of land in question; and no statute has been cited, or can be found, giving them such power. They must necessarily claim, therefore, that their authority, if any, to do so is conferred upon them by Section 5813 of the Code of 1932, which provides that "the county board of commissioners may also open new public roads and widen or change the location of old public roads, where, in their judgment, such change would be for the material interest of the traveling public."

While the language used is broad and general, we do not think it may soundly be construed as applying to lands already devoted to public use. On the contrary, as stated in *Evergreen Cemetery Association v. City of New Haven, supra,* "it will be presumed that land applied to one public use should not be taken and devoted to another use inconsistent with the first." We think the presumption applies with much force to lands devoted to cemetery purposes. A cemetery is a sacred spot, where lie buried the loved ones of the living, and we are satisfied that the Legislature never intended that the general language of the statute should apply to lands dedicated to such purposes; and, should that body at any time conclude that necessity require the granting of the power to condemn such lands, it would expressly give such authority, with special provisions as to disinterment, etc., leaving nothing to doubt and uncertainty. We hold

therefore, for the reasons stated, and for others that might be mentioned, that out statute of eminent domain, upon which the respondents must rely for such power, does not give the authority claimed.

It is argued, however, by counsel for the respondents that the cemetery will not be injured in any way, for the reason that no one was buried on the strip of land condemned and that it was used only for hitching horses and parking vehicles, and that the remaining unused space would always be adequate for burial purposes. A similar question arose in *Evergreen Cemetery Association v. City of New Haven, supra,* and was disposed of by the Court in the following language: "A cemetery includes not only lots for depositing the bodies of the dead, but also avenues, walks, and grounds for shrubbery and ornamental purposes. All must be regarded alike as consecrated to a public and sacred use. The idea of running a public street, regardless of graves, monuments and the feelings of the living, through one of our public cemeteries, would be shocking to the moral sense of the community and would not be tolerated except upon the direct necessity. Yet the right to do so must be conceded if the action of the respondents in the present case can be vindicated. The right to take one part of a cemetery implies a right to take another; and the right to take one part implies the right to take the whole."

The reasoning of the Connecticut Court in that case applies here. It is not disputed that the whole tract of nine acres was devoted to the public use of the character above referred to. Nor does the fact that the part of the cemetery remaining would always be adequate for burial purposes— a question that the future alone can answer—is at all a controlling factor in the giving of the right and power to condemn, or can justify it in any way.

It may be noted, in passing, that it was agreed by counsel on the hearing of this appeal that the changes contemplated

in the road in question had been made, and the road paved. The Court again calls attention to the fact that the defendants, or others in similar circumstances, can protect themselves, under the law, against improper or illegal condemnation proceedings, only by invoking the aid of a Court of Equity, in an action properly brought.

The judgment of the Circuit Court is reversed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.