## 14749

ZERO CHURCH v. BRITTON *ET AL.*

(198 S. E., 848)

*Messrs. Dinkins & Stukes, John M. Daniel, Attorney General,* and *J. Ivey Humphrey, Assistant Attorney General,* for appellants,

*Mr. L. D. Jennings,* for respondent,

September 17, 1938.

The opinion of the Court was delivered by Mr. Justice Bonham.

In August, 1935, the county board of commissioners of Clarendon County, for the purpose of widening a public road, instituted proceedings for the condemnation of a small part of a tract of land which had been conveyed to the trustees of Zero Church for a burial ground and place of worship. From the decision of the commissioners an appeal was taken to the Circuit Court, which found against the contentions of the owner of the land that the county board was without authority or power to condemn the property for road purposes. The judgment of that Court, however, for the reasons stated in the opinion of this Court, was reversed. See *Board of Com'rs for Clarendon County v. Holliday et al.,* 182 S. C., 510, 189 S. E., 885, 109 A. L. R., 1496.

On May 12, 1937, the plaintiff, Zero Church, brought the present action, in which it asked that the defendants be permanently enjoined from entering upon the land in question for any purpose whatsoever, and for judgment against them in the sum of $25,000.00. It was alleged that pending the appeal to the Supreme Court, and "over the protest of the plaintiff, the defendants, without legal authority to do so, and in utter, wilful and wanton violation of the rights of the plaintiff, entered upon the strip of land hereinabove described, cut deep excavations upon the same, and constructed a roadbed on said strip of land, leaving a large and unsightly cut on either side of the said roadbed." It was also alleged that after the Supreme Court reversed the decision of the Court below, the defendants declared that they intended to go upon the property and to place "the hard-surface on said strip of land," such additional work being required to complete the road,

On the same day that the action was·begun, the plaintiff applied to Judge Stoll for a temporary restraining order, which was granted. The defendants then moved to have such order vacated, the matter being heard upon the summons and complaint, the record in *Board of Com'rs of Clarendon County v. Holliday, supra,* and certain affidavits filed by the movants. The motion was refused, and from the Court's order an appeal was taken. The defendants then separately demurred to the complaint. The demurrers, however, were overruled by Judge Stoll; and in due time the formal orders made by him thereabout were also appealed from. Meanwhile, in accordance with the rules of the Court, the record in the appeal from the order refusing to dissolve the temporary injunction was prepared by the defendants and served upon plaintiff's counsel, who agreed thereto. The Circuit Judge then directed, by an order dated July 13, 1937, that this appeal and the one taken from the orders overruling the demurrers be combined in one transcript of record, and also granted an extension of time for perfecting the appeal as provided therefor.

Thereafter, as provided by the order of the Court, the defendants answered the complaint, whereupon the plaintiff demurred to each of certain defenses upon the ground that it failed to state facts sufficient to constitute a defense. On August 21, 1937, after overruling the objection to the jurisdiction of the Court to hear the matter, Judge Stoll sustained the demurrers; and the defendants thereupon appealed from his order doing so. Later, on August 28, the Judge directed that all the appeals taken by the defendants be combined in one transcript of record, and extended the time for serving and perfecting them.

It is thus seen that three separate appeals are combined in the record before us, to wit: (1) From the refusal of the Circuit Judge to vacate the temporary order of injunction. (2) From the orders overruling appellants' demurrers to the complaint. (3) From the order sustaining respondent's demurrers to the answers of the defendants.

We will first determine, in our consideration of these appeals, the effect of the decision of this Court in *Board of Com'rs of Clarendon County v. Holliday, supra,* upon the case at bar. By reference to the opinion, it will be seen that we there directed attention to the well-settled rule in this jurisdiction, as stated in *Columbia Water Power Company v. Nunamaker,* 73 S. C., 550, 53 S. E., 996, that "when the right to institute condemnation proceedings is contested, the proper remedy is to bring an action in the Court of Common Pleas in order that the Court may, in the exercise of its chancery powers, determine such right." (Page 998.) We also there cited the much later case of *Seabrook v. Carolina Power & Light Co. et al.,* 159 S. C., 1, 156 S. E., 1, in which the rule is more elaborately and emphatically stated as follows (page 2) : "As it is conceded in the opinion of Mr. Justice Cothran, quoting his exact language, the only way possible, under our law, for the plaintiff, or any other citizen under similar circumstances, to protect himself against improper, unnecessary, unwarranted, or illegal condemnation proceedings on the part of a power company is 'to contest the right to condemn by an independent action in the Court of Common Pleas, in equity.' The cases cited by him, *Columbia Water Co. v. Nunamaker,* 73 S. C., 550, 53 S. E., 996, and others, fully sustain this rule of our law. The plaintiff has adopted that course, the only one open to him." See also *Riley v. Union Station Co.,* 67 S. C., 84, 45 S. E., 149; *Town of Greenwood v. Yoe,* 89 S. C., 24, 71 S. E., 238.

As further appears, the defendants in the *Holliday case* did not bring such an action, but participated in the condemnation proceedings instituted by the plaintiffs under the statute. In this situation, therefore, as pointed out by the Court in its opinion, they improperly raised, on their appeal from the decision of the Board of Commissioners, the question of the *right* and *power* of the board to condemn the property in question, as the only matter that was properly determinable by the Circuit Court on such ap-

peal was the one of compensation. But no such point—which would have been sustained—was made on the trial *de novo* had in that Court; but, on the contrary, the course followed by the defendants to determine the board's right to condemn was acquiesced in by the plaintiffs. The decision of the jury thereabout being adverse to the contention of the defendants an appeal therefrom was taken to this Court, which held that the plaintiffs, because of their acts and omissions referred to, had no good reason to complain of the failure to the defendants to follow the other and proper course of action; and that they were estopped to assert that the defendants could not have a determination in that proceeding of the question raised by them in the Circuit Court. Near the end of the opinion, we said (page 889): "It may be noted, in passing, that it was agreed by counsel on the hearing of this appeal that the changes contemplated in the road in question had been made, and the road paved. The Court again calls attention to the fact that the defendants, or others in similar circumstances, can protect themselves, under the law, against improper or illegal condemnation proceedings, only by invoking the aid of a Court of equity, in an action properly brought."

Counsel for the defendants construe that part of the opinion above quoted as follows: "The meaning of this language is plain to us to the effect that the respondent having sat idly by, depending upon its appeals from the condemnation award and the verdict and judgment of the Circuit Court affirming such, without following the well settled procedure affording the only remedy, to wit, an injunction proceeding in equity, while the road was relocated and large sums spent on its construction on its new location on this and adjacent properties, cannot thereafter bring such equitable action and enjoin the completion and maintenance of the road." It is argued, therefore, that the complaint states no cause of action against any of the defendants, unless, by an extremely liberal construction of it, it may be held to state defectively a cause of action against Clarendon County

"for the value of private property taken for public use without compensation, under the Constitution and the decisions of this Court."

Counsel for the plaintiff contends that under the law as declared in the *Holliday case,* the Board of Commissioners had no right to condemn this property, and that their going upon it, therefore, pending the determination of such condemnation proceedings, gave them no legal claim thereto, but was done by them at their peril; and that, in view of their expressed determination, after the decision was rendered, to complete the road by hard-surfacing same, it became necessary for the plaintiff, considering the holdings of the Court with that part of its opinion above quoted, to bring an action, as it has here done, in order to protect and preserve its rights in the premises.

It will be noted that when the Court wrote the quoted paragraph of the opinion, in the proper construction of which counsel are not in agreement, it had already concluded, and had so stated, that the plaintiffs in that case were without power or authority to condemn for road purposes lands used for a public cemetery, there being no statute vesting them with such power. In the oral argument of counsel, the Court understood that the changes in the road in question, pending the appeal, had been made, and the road paved. This we later learned was not entirely correct, but substantially so. The road had been completed, at considerable expense, except as to the hard-surfacing of same. That, however, did not affect or change the meaning of the language used by the Court. Construed in the light of the circumstances detailed, the meaning is clear, to wit, that the appellants were alone to blame for the plight they were in, in that they had failed to invoke the aid of a Court of equity, in an action properly brought at the proper time, the only way they could protect themselves, under the law, against improper or illegal condemnation proceedings. That is to say, pending the appeals, the defendants, the trustees of the church, as participants in the condemnation proceed-

ings, had forfeited their right to bring an action in the Court of Common Pleas, in equity, for the purpose of determining the power and authority of the county board to condemn the property in question; on the contrary, they elected to have the question determined in the condemnation proceedings, which did not afford the church, the owner of the property, any protection, under the law, against the construction of the road by the defendants here; and it was this fact to which the Court was directing the attention of the defendants in the *Holliday case,* when it wrote the paragraph of the opinion in question. The county, acting under the condemnation proceedings brought for that purpose, had a right to go upon the property and to construct the road, the owner not being entitled, in the circumstances named, to an injunction to prevent this being done. See Subdivision 2 of Section 5813, Code of 1932. But the respondent claims that this section only applies where the right to condemn is not in question. Of course, this would be true as to an action properly brought to determine such right or power.

But it is argued that the entry of the Board of Commissioners on the land in dispute was an unlawful entry; that it was so held by the opinion in the *Holliday case.* We think this contention is not sound. On the contrary, that opinion specifically holds that the entry was lawful; was in accord with the provisions of the condemnation statutes. The opinion does hold that by reason of the fact that Zero Church did not contest such entry (which was for the purpose of condemning the land for public use), in the manner provided by the statutes, *which manner of contesting the entry is expressly declared to be exclusive,* it has now lost the right to contest it.

, The situation is not unlike the case of one who enters upon land under a claim of color of title, which claim is without foundation in law; the real owner of the property stands by, idle, and sees the claimant occupy and improve the premises without protest or action until by passage of

time claimant's possession has ripened into title by possession; the owner is estopped to dispossess the occupant, or to deny his title.

It is true 'that in the present case the church took action against the condemnation, but it took the wrong action, instead of the exclusive action provided by the statutes, and has estopped itself now to proceed by this action.

This action is for an injunction to prevent the county from entering upon the premises and completing the road. It appears that the road is practically completed. An injunction will not lie to enjoin that which is already done.

The plaintiff, however, makes the further contention that if the position of the appellants is sustained, the Court will be saying, on the one hand, that they, the condemnors, had no right to condemn the cemetery property for road purposes, but on the other hand, that they can hold what they have illegally attempted to take.

It is true, as we have said, that the question of the right and power of the county board to condemn for road purposes property used for a public cemetery, was raised by the owner of the property on appeal to the Circuit Court from the decision of the county board. But, as we have pointed out, the question was improperly raised in such a proceeding, and this Court decided it on its merits only for the reason that the county acquiesced in the trial of that issue in the Court below and was, therefore, estopped to claim that the defendants there were not entitled to a determination of the question by this Court. Such determination, however, could not in any way enure to the benefit of the defendants there, the trustees of the church, so as to give to them the right to bring an action in the Court of Common Pleas, in equity, to prevent by injunction the completion of the road and its use by the public, for the reason, as held by the Court in the *Holliday case,* that the building of the road, as contemplated by the county, could only be prevented in *one* way, namely, by an action in the Court of Common

Pleas, in equity, properly brought, which includes the element of time. After the decision of the board of condemnors, before whom no question as to their power or authority to condemn the property was raised, the county took possession of the strip of land, as provided by law, for the purpose of building the road. Its entry thereon, as we have said, was lawful, and it continued in lawful possession until the road had been practically built. If the plaintiff here, as we have said, desired to protect itself against improper or illegal condemnation proceedings, and to prevent the building of the road in question, it was imperative that it invoke, at the proper time, the aid of a Court of equity to do so. See *Town of Greenwood v. Yoe, supra,* and other cases. Having participated in the condemnation proceedings, however, it lost its right to bring thereafter such an action; and the condemnors, having made a lawful entry upon the property in question under the condemnation proceedings, for the purpose of building the road for which the property was condemned, the owner of the property, Zero Church, because of its said acts and omissions, was and is estopped to bring an action for injunctive relief, which it here seeks to do.

In view of the conclusions reached and above stated, what is the proper disposition of the several appeals taken in this case? As to the first of these, it is clear that the granting of the temporary injunction was improper, and that the Court should have allowed the motion of the defendants to rescind its order thereabout.

As to the second appeal, we think that the complaint, when liberally construed, states defectively a cause of action against the defendant, Clarendon County, for the value of the property taken for public use without compensation, and for that reason the demurrers thereto were properly overruled. The plaintiff, if it be so advised, is granted leave to amend its complaint in that respect.

As to the third appeal, the order of the Circuit Judge sustaining the demurrers of the plaintiff to the several de-

fenses of the answers of the defendants, must be reversed. This conclusion is necessarily reached in view of the Court's construction of its opinion in *Board of Com'rs of Clarendon County v. Holliday, supra.* We deem it unnecessary to consider any additional reasons why the order should be reversed. See, however, *Liles v. Harris-Grimes Company,* S. C., 76 S. E., 115.

The judgment of this Court is:

First. That the order refusing to vacate the temporary injunction, from which the first appeal is taken, be, and the same hereby is reversed.

Second. That the orders overruling the demurrers of the defendants to the complaint of the plaintiff, from which the second appeal is taken, be, and they hereby are affirmed.

Third. That the order sustaining the plaintiff's demurrers to the answers of the defendants, from which the third appeal is taken, be, and hereby is, reversed.

The case is remanded to the Circuit Court for further proceedings consistent with this opinion.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur.

MR. JUSTICE BAKER dissents.

MR. JUSTICE CARTER did not participate on account of illness.

MR. JUSTICE BAKER (dissenting): If the *Holliday case* (182 S. C., 510, 189 S. E., 885, 109 A. L. R., 1496), decided anything at all, it settled these points: (1) Although ordinarily a different form of proceeding is the proper method of testing the right of condemnation, yet under the peculiar circumstances existing the right to condemn was properly before the Court for determination in that proceeding; (2) the right of the county to condemn did not exist. The county made no pretense of claiming to justify any step taken by it, including its entry upon land admittedly the property of the plaintiff, except under the authority of the condemnation statute, and since the Court, after very full consideration of the question, expressly held that the

condemnation statute did not afford any authority, it followed as an inevitable consequence that the entry of the county was without authority and in law a trespass, the gist of which is any unauthorized entry on the land of another. 63 C. J., 895. While the Court did not in express words designate the county as a trespasser, yet having held that it had entered upon and occupied the land of the church, and exercised dominion over it, without any authority of law, necessarily the county was adjudged to be a trespasser, whether so designated or not. It is the facts and circumstances rather than the epithets applied to an act which give character to the act. *Furman v. A. C. Tuxbury Land & Timber Co.,* 112 S. C., 71, 99 S. E., 111.

Nevertheless, and despite this former adjudication and final judgment of the Court in relation to the rights of the parties, in a proceeding between the same parties involving the same land, the majority opinion in this case in effect holds that the county is not a trespasser but has rightfully entered upon the land under the authority of the condemnation statute, which the Court has previously held afforded no authority. In the former case the Court held that the county was estopped to deny the right of the church to have the right of condemnation determined in that proceeding, and then, after very full consideration of the question, decided the right asserted adversely to the county, yet now the Court in effect holds that the church in turn in a subsequent proceeding between the same parties involving the same strip of land is estopped to assert that the right was determined in the former proceeding.

In the former proceeding the condemnation statute was held to be inapplicable. It, therefore, of necessity passed out of the picture, and it is now wholly irrelevant. If the county is a trespasser on land admittedly the property of the plaintiff, a matter definitely settled by the former opinion of the Court, it is difficult to comprehend why the Court is without authority to interfere by injunction to prevent the continued and repeated trespasses alleged in the complaint in

this case. Even if the road has been practically or even wholly completed, a circumstance apparently deemed of some importance in the prevailing opinion, it cannot affect the right of the church to have continued and repeated trespasses upon its property prevented by injunction. If a person unlawfully trespasses upon the land of another by entering thereon without authority and building a house, it would seem obvious that the owner of the land would have a clear right to injunction to prevent continued and repeated unauthorized entries upon the land for the purpose of using the house. There does not seem to me to be any justification for contending that a person who unlawfully places a structure upon the land of another by that act alone acquires such a right to continue to maintain the structure, and to freely and repeatedly enter upon the land for the purpose of using the structure, that the Court is without power to interfere by injunction, yet, as it seems to me, the majority opinion has attained a precisely similar result.

In other words, as I interpret the prevailing opinion, if one unlawfully gets into the possession of the lands of another, then such one may hold the fruit of his trespass, but must answer in a suit for damages for the unlawful taking of the lands.

In addition to the complaint alleging a cause of action for injunctive relief, it is attempted therein to state a cause of action in tort for damages for trespass, but such action is not maintainable against the county and the State Highway Department even under the case of *School District v. Marion County,* 114 S. C., 382, 103 S. E., 767; and there has not been such a taking of the property as will support an action for damages. Of course, under the holding in the prevailing opinion, there has been a taking of the property in the first degree.

. On account of the great respect entertained for the views and learning of the writer of the prevailing opinion and the Justices joining therein, it is always with regret and some misgiving when I find myself out of accord with their views,

yet the result attained by the majority opinion in this case appears to me to be so inconsistent with the former judgment of the Court in the *Holliday case* that I am unable to bring myself to concur, and I, therefore, dissent.