15182

GREENWOOD COUNTY v. WATKINS

(12 S. E. (2d), 545)

Order of Judge Gaston follows:

This case came on for trial before me, without a jury, at the February, 1940, term of Court. After the taking of testimony and hearing arguments of counsel, I took the matter under advisement.

This is an action to quiet the title to certain lands heretofore acquired by the plaintiff from the defendant, and was commenced by the service of the summons and complaint on September 17, 1939.

The complaint, in substance, alleges that Greenwood County, in developing a hydro-electric project on the Saluda River, at Buzzard Roost, required a tract of land of 152.2 acres, in Newberry County, particularly described in the complaint, which was owned by the defendant, and on December 14, 1934, the county commenced a condemnation proceeding against the defendant to condemn said land. After the service of notice in condemnation, a jury was duly impaneled by the Clerk of Court to fix the compensation, and from the award of the clerk's jury, both parties appealed, which appeal came on for trial and was tried *de novo,* before the presiding Judge and a jury at the April, 1938, term of Court. The verdict then rendered became final, and was paid to the defendant on December 23, 1938, with interest.

After the rendition of the verdict by the clerk's jury, the county deposited the amount of the award there made, and entered into the possession of the lands involved, and has since been in the possession thereof.

These alleged facts are not in dispute.

The allegations of the complaint, which are denied by the defendant, are to the effect that plaintiff was authorized to acquire all lands necessary or needful, within its discretion, for this project, and among the purposes for which these lands were required and are needed by the plaintiff is to provide a right-of-way for the electric transmission line of Duke Power Company. Plaintiff alleges that it has the

right to convey to Duke Power Company an easement over these lands for the following reasons:

1. That in such condemnation proceeding, it acquired a fee-simple title to the lands;

2. The question that plaintiff did acquire a fee-simple title to the land is now *res adjudicata*;

3. The defendant is now estopped to deny that plaintiff acquired a fee-simple title;

4. And even if it should be held that the plaintiff acquired only an easement, the proposed conveyance to Duke Power Company is such a use as is within the purposes for which the lands were acquired, and the county has the right to convey to Duke Power Company an easement thereover.

The defendant contests each of the claims of the plaintiff, as above set forth, and contends that plaintiff acquired only an easement by the condemnation proceeding, and it has no right to convey to Duke Power Company any right-of-way thereover.

Duke Power Company has refused to accept a conveyance from the plaintiff in view of the claim of the defendant, and requires of the plaintiff, before accepting such right-of-way, that it have adjudicated its rights and title, and upon the failure of the plaintiff to do, threatens condemnation.

It will thus appear that there are only two issues in this case: (1) Has plaintiff acquired a fee-simple title to the lands involved? (2) If not, is the proposed conveyance of the right-of-way by plaintiff to Duke Power Company within the purposes for which the lands were condemned? The testimony and arguments of counsel have been directed entirely to those issues.

Taking up the first issue presented, plaintiff contends that, under the authority of the statutory law, under which it condemned the property, plaintiff acquired a fee-simple title. It appears that under Act No. 299 of 1933, 38 Stats., page 411, the Legislature specifically authorized counties to construct hydro-electric projects, together with other powers.

This Act did not give the right of condemnation, and was amended in 1934 by Act No. 798, 38 Stats., page 1392, and by Section 7 thereof, the same rights and privileges to condemn were granted as had been conferred by Act No. 236 of 1933, 38 Stats., page 299. The last-mentioned Act, in Section 7, provides, with respect to the right and power to condemn: "Every such municipality shall have power to condemn any such works to be acquired and any land, rights, easements, franchises, and other property, real or personal, deemed necessary or convenient for the construction of any such works, for extension, improvements, or additions thereto, and in connection therewith, shall have and may exercise all the rights, powers, and privileges of eminent domain granted to municipalities under the laws relating thereto. Title to property shall be taken in the name of the municipality. Proceeding for such appropriation of property shall be under and pursuant to the general proceedings of law relating to condemnation proceedings in the exercise of the right of eminent domain."

It thus clearly appears that the powers of condemnation conferred upon the plaintiff by Act No. 299 of 1933, as amended, are "all rights, powers, and privileges of eminent domain granted to municipalities under the laws relating thereto", whereas, the procedure to be followed is that of the general condemnation statute, commonly known as the railroad statute, now embodied in the Code as Sections 8454 to 8467. Thus far, the parties agree.

It should be well to note here that the general condemnation statute limits the title acquired to an easement (Code, Section 8461), and if it had been the intention of the Legislature by the above-mentioned Act of 1933, to limit the title to be acquired thereunder to an easement, then the Legislature could have referred to the general condemnation statute for the power and authority given, as well as procedure. The procedure thereunder is entirely different to that prescribed for municipal corporations (Code, Sections 7311 *et seq.*). In addition to the difference in procedure,

our Supreme Court has clearly decided that the procedure specified under the general condemnation statute is free from constitutional objection, in the method provided for the hearing before the clerk's jury and the right therein given to the condemnor to deposit the amount of the award of the clerk's jury, and take possession of the property, pending any appeal to the Circuit Court. *Lexington Water Power Company v. Wingard,* 150 S. C., 418, 148 S. E., 366.

So it, therefore, becomes necessary to determine what were "all the rights, powers, and privileges of eminent domain granted to municipalities under the laws relating thereto", in 1933. The general powers of eminent domain, theretofore conferred upon municipalities, are embraced within Act No. 300 of February 20, 1907 (25 Stats., page 640), which is now embraced within the Code in Sections 7307 to 7317. Sections 1 and 2 of that Act, which are now Sections 7307 and 7308 of the Code, provide:

"Any municipal corporation desiring to become the owner of any land, situate within the corporate limits of such municipal corporation, in this State, for the erection of a public building, for the use of the corporation, or the purpose of procuring a supply of water or establishing a sewerage system or other public works, for the use of the corporation, shall have the right to purchase said land from the owner or owners thereof, and pay for the same in such manner as said municipal corporation may determine."

"In case the owner or owners of any land desired by a municipal corporation for the above purposes shall refuse to sell the same, it shall and may be lawful for said municipal corporation to condemn said land in the manner hereinafter provided."

Section 3 of the Act, now Section 7311 of the Code, specified the title that the municipality shall thereby acquire, in a portion of the last sentence, as follows: "And on the payment of the full value of said land, and such special damages aforesaid, ascertained and determined on in the manner herein provided, the fee simple of the said lot or

lands shall be vested in such city or town for the use of the public, * * *."

So it thus clearly appears by the specific language of the statutory law, that a municipality, under its general powers by condemnation, acquires a fee-simple title to the lands.

The Code, also, contains a special provision with respect to municipalities acquiring streets in Section 7367 *et seq.,* of the Code, and by Section 7368 it is again specifically provided, " * * * after judgment in such case the fee simple of said lot or lots, or parts of lots, shall be vested in such city or town, upon the payment", etc.

These are the only two provisions of the Code that have come to my attention that specify the title that municipalities acquire in condemnation proceedings. The defendant contends that, under Section 7280 of the Code, it is provided that towns shall have the right " * * * to acquire existing waterworks by condemnation in the manner now provided by law for railroad corporations to acquire rights of way * * *", and contends that the power there conferred is limited to an easement, and is applicable here. But, in the first place, it will be observed that the clause mentioned applies to waterworks, and not to a hydro-electric project. This clause was not in the original Act, but was added by an amendment in 1916 (29 Stats., page 939). Furthermore, it does not specify the title that a town shall acquire, it applies only to the condemnation of existing waterworks, and I think a reasonable construction is that the reference to the railroad statute is only for the purpose of procedure, like here in the above-mentioned Act of 1933. All of these provisions of the Code must be construed together, and I think it clear that the title acquired in a condemnation proceeding by a municipality, under the statutory law mentioned, must be referred to the Act of 1907, or Section 7311 of the Code.

But if there were any doubt about it, Section 7294 of the Code specifically provides that the power conferred by Sections 7280 to 7284, and Sec. 7293, " * * * shall be

taken, deemed and construed to be, in addition to the powers now enjoyed by said cities and towns." So thus it is plainly stated that these sections were not intended to be construed as cutting down the power otherwise given, but as cumulative thereto.

Defendant further contends that the power of condemnation being a harsh remedy must be strictly construed, and that is true. But this principle is not applied as strictly to public bodies as it is in construing powers given to private corporations. In *Leitzsey v. Columbia Water-Power Co.,* 47 S. C., 464, 479, 25 S. E., 744, 749, 34 L. R. A., 215, the following quotations from eminent writers on the subject were approved: " 'The principle of strict construction is less applicable where the powers are conferred on public bodies for essentially public purposes.' End. Interp. St., § 355. 'The right to condemn will be more readily inferred in favor of public corporations exercising powers solely for the public benefit than in favor of private individuals, or corporations organized for pecuniary profit.' Lewis, Em. Dom., § 241."

And even in the case of a private corporation, and relied upon by the defendant, *Ex Parte Savannah River Electric Company,* 169 S. C., 198, 203, 168 S. E., 554, 556, the following is a part of a quotation approved:

" ' * * * judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardship, or of what in their view is right and reasonable or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is supposed to be more consonant with justice than their ordinary meaning.'

" 'All proceedings in statutory actions are limited by the specific power granted by the statute, the words of which

must be construed in their legal and commonly accepted meaning.' "

Moreover, here we do not have room for construction, because the general powers of municipalities, as above pointed out, specifically provide that the fee-simple title to property so condemned is acquired.

It necessarily follows that under the provisions of Act No. 236 of 1933, hereinbefore quoted, Greenwood County was given the right to acquire the fee-simple title to any land deemed necessary or convenient in making this development. It is not disputed that Greenwood County, in condemning this particular land, deemed it necessary to acquire the fee. I think it obvious that it was important to Greenwood County to acquire the fee in this particular property, if it had the power to do so. This is the site of the dam, the side of its power plant, its steam auxiliary plant, its eight residences and other structures deemed necessary and convenient in the operation of the plant. The improvements thereon are not only valuable, but it is such a place that it would be important to the owner to have the right to exclusive possession and title. If an easement only were acquired, the defendant would have the right to make such uses thereof as were not inconsistent with the use being made by the plaintiff. *Miller v. Seaboard Air Line Railway,* 94 S. C., 105, 77 S. E., 748.

Plaintiff further contends that this question is now *res judicata.* It is an uncontradicted fact that all the lands acquired by the plaintiff for the dam at Buzzard Roost and the impounded water area have been acquired in fee simple, with the possible exception of this tract acquired from the defendant. Because, and it is remarkable, that this is the only tract where the county was required to condemn for the purpose of fixing the value.

In commencing the condemnation proceeding, the plaintiff served notice in condemnation, particularly describing the land, having attached thereto a plat, and this notice stated, " * * * that the whole of the said lands, in-

cluding the fee, are required, and demanded for the said project * * * ". It is further undisputed that, in the trial of the condemnation on appeal in the Circuit Court, the following stipulation was entered into during the trial:

"(Stenographer's note.—During the cross examination of Mrs. Watkins, Mr. Griffith exhibited to her a certain timber deed and asked her if that was a timber agreement between her and Mr. Sharp. The jury was excluded from the room and there followed long arguments and discussion of the matter, ending as follows:):

"Mr. Griffith.—I want a stipulation in the record that this condemnation proceeding covers all property, including timber now on the acreage being condemned in this proceeding, except such timber as has been conveyed by the written agreement executed by Mrs. Watkins to Mr. Sharp, dated June 22nd, 1937, and recorded in the Office of the Clerk of Court for Newberry County in deed book 42, at page 593.

"As long as that stipulation goes into the record, I have no objection to their excluding from the jury that timber deed. I have no objection if your Honor will charge the jury that the merchantable pine timber is not to be taken into consideration in the award.

"I want it understood that all timber, trees, brush, and everything else, that does not come within the terms of the timber deed to Mr. Sharp, goes with the land.

"(After further argument and discussion):

"Mr. Griffith.—I have no objection to the deed being kept from the jury, and his Honor charging the jury that they are not to consider the value of any merchantable pine timber. But, so far as the title acquired by Greenwood County in this condemnation, Greenwood County gets all property, including timber and trees, except such as is covered by that particular deed.

"Mr. Tinsley.—That is all right."

It is further undisputed that the Circuit Judge charged the jury in that condemnation proceeding that the fee to

the lands was being condemned. Also, the Circuit Judge, in denying plaintiff's motion for a new trial, said: "It is agreed that Greenwood County acquires all of the property of Mrs. Watkins described in the notice and the petition in condemnation, subject to the timber deed executed by Mrs. Watkins to Mr. J. F. Sharp, dated June 22, 1937, and which is recorded in the office of the Clerk of Court for Newberry County in Deed Book 42, at page 593."

Furthermore, the verdict thus fixed in that trial was paid the defendant, and was receipted therefor on December 23, 1938, which is a part of the record in said condemnation proceeding.

It is well settled in this State that the rulings in a case, even though admittedly they be wrong, become the law of the case, and are *res. adjudicata* between the parties. *Jenkins v. Southern Railway Co.,* 145 S. C., 161, 143 S. E., 13.

Furthermore, upon being served with the notice in condemnation, the defendant was specifically notified that the fee to the lands was sought to be condemned, and if the defendant had desired to question the power of the plaintiff to condemn the fee, she should have filed a bill in equity, to enjoin the condemnation, and sought an order limiting the condemnation to the taking of an easement. The case of *Town of Greenwood v. Yoe,* 89 S. C., 24, 29, 71 S. E., 238, 240, is directly in point.

"It has been determined by many decisions following *Railway Co. v. Ridlehuber,* 38 S. C., 308, 17 S. E., 24, that the condemnation statutes provide no machinery for determining the right to institute such proceedings, and that the only matter to be determined thereby is the amount of the compensation. Questions as to the constitutionality of the statute, the power of the Town of Greenwood to condemn lands for water supply within or without its corporate limits, the jurisdiction of Judge Aldrich to grant the order directing the clerk to impanel a jury in condemnation, the necessity requiring condemnation of the land desired,

all relate to the right to condemn, and were not proper to be considered in these proceedings. If defendant desired to make questions of this character, she should have instituted proceedings before the verdict in condemnation to test the right to condemn and to enjoin the condemnation proceedings, as was done in the case of *Riley v. [Charleston Union] Union Station,* 71 S. C., 457, 51 S. E., 485, 110 Am. St. Rep., 579, and other cases."

This rule has been uniformly applied in this State. *Seabrook v. Carolina Power & Light Co. et al.,* 159 S. C., 1, 156 S. E., 1; *Board of Com'rs for Clarendon County v. Holliday,* 182 S. C., 510, 189 S. E., 885, 109 A. L. R., 1496.

Defendant contends that inasmuch as it is admitted that the plaintiff had the power to condemn at least an easement in this land, the defendant had no right to seek to enjoin the condemnation proceeding. If that were true, a condemnation proceeding would be subject to collateral attack on such issue at any time. It requires no citation of authority to sustain the principle that an adjudication of a Court record cannot be attacked collaterally. The plaintiff has condemned in this condemnation proceeding 152.2 acres and the defendant has raised no question that all of this acreage is necessary for the project, and has participated in the condemnation proceeding, and accepted the award. Under such circumstances. I think it clear that the defendant would not be allowed to come back into Court and claim that the plaintiff condemned more acreage than was necessary. And is there any reason that a different principle should be applied as to the amount of acreage than as to the quantum of estate so condemned? Both questions relate to the power to condemn. The following quotation from the case of *Seaboard Air Line Railway v. Atlantic Coast Line Railroad Co.,* 88 S. C., 477, 478, 71 S. E., 39, 40, is pertinent here:

"It would be an anomaly to have a judgment fixing the amount of compensation to be awarded in condemnation pro-

ceedings in advance of a determination whether the right to condemn exists, upon which depends the duty to pay the compensation damages. Such a judgment presupposes the ascertainment of the right upon which it is based. Hence, it is essential to stay proceedings, so that there be no such judgment until the right thereto has been established."

It should be observed that, under the procedure which was being followed in this case, and which we generally refer to as the railroad statute (Code, Section 8454 *et seq.*), plaintiff was required to serve notice in condemnation in the same manner as a summons is served in a civil action. That is the only method that was available to plaintiff in commencing the condemnation proceeding, and that was the only paper that plaintiff was required to serve upon the defendant in the condemnation proceeding. The petition and order thereon, directing the impaneling of the jury by the Clerk of Court, are *ex parte,* and are filed without notice to the defendant. After they are filed, the clerk gives the landowner notice thereof, and of the date fixed for the hearing (Code, Section 8455). So unless the notice in condemnation is binding upon the parties as to amount of acreage and the quantum of estate acquired, a condemnor has no method of having those questions definitely and finally decided by the condemnation proceeding. Stated in another way and applied here, unless this condemnation proceeding is *res judicata* between the parties as to the title acquired by the plaintiff, then the plaintiff had no method under the law by which it could have had that question adjudicated. And in every case where a condemnation is had, the only way for the condemnor to have adjudicated the question of the quantum of estate acquired, is to go through with the condemnation proceeding, and after it is over and settled and becomes final, to bring an action like the action here brought. There is no reason suggested why such a result should be approved in our procedure, under which a multiplicity of suits are to be avoided, and under which we

seek to adjudicate definitely and finally the rights of the parties as expeditiously as possible, with doing justice.

It is obvious that it is important to the condemnor that it be known early what title is acquired in a condemnation proceeding. It is common knowledge that, in making public developments, the condemnor almost invariably is required to obtain a loan in some form for defraying the costs and expenses. It is clear that acquiring fee-simple titles for the project, such as this, would be important in obtaining financial assistance. The area of the lake and dam exceeds 12,000 acres. On this particular property there has been placed, other than the dam, valuable improvements hereinbefore mentioned. These lands and improvements no doubt would have a substantial value, even if the project, as a hydro-electric development, should, perchance, be discontinued.

In addition to all the foregoing, the application of the rule here does not do the defendant any injustice. She has been paid for the lands, upon the theory that the plaintiff was acquiring a fee-simple title. The Judge charged fully that their verdict should include the full value of the land, and all resulting damages—past, present and future. Apparently, the plaintiff, and not the defendant, was dissatisfied with the amount of the verdict, as the plaintiff alone made a motion for a new trial. The defendant has, therefore, received complete compensation.

The plaintiff further contends that the defendant is now estopped to question the fact that the plaintiff acquired a fee-simple title to her land. The record in the condemnation proceeding, as heretofore pointed out, shows that the trial of the condemnation proceeded upon the theory that the plaintiff was acquiring the fee-simple title to the lands from the commencement of the proceeding on December 14, 1934, to the order overruling the motion for a new trial on October 10, 1938. During all of this time, she made no effort to enjoin the proceedings, or to raise the question, and she heard the Judge charge the jury that the plaintiff was

acquiring the fee-simple title, and she accepted the verdict of the jury, based upon that ruling. I am of the opinion that the rule applied in the case of *Board of Commissioners for Clarendon County v. Holliday*, 182 S. C., 510, 189 S. E., 885, 109 A. L. R., 1496, should be applied here. That case was an appeal from final judgment in a condemnation proceeding. There, the trial below had proceeded upon the theory that in that condemnation proceeding the question of power to condemn could be adjudicated. In the Supreme Court, for the first time, the question was raised that in a condemnation proceeding, the only question involved is the amount of compensation, and the right to condemn is not involved. The Court held that was true, but that the parties having participated in the trial on a different theory, even though it was erroneous, were estopped to raise the question.

Having concluded that the plaintiff acquired a fee-simple title, the second issue in the case, under which plaintiff contends that even if only an easement were acquired the use proposed to be made of the property is within the purpose for which it was acquired, becomes unimportant. However, inasmuch as the question is based largely on the state of facts, I will dispose of it also.

I find that one of the transmission lines of Duke Power Company will be flooded by the impounded waters at Buzzard Roost. In this situation, Greenwood County and the Duke Power Company entered into a written agreement, which for the purpose of this case, provides that Greenwood County will relocate the transmission line of Duke Power Company, at the expense of the county. The only practical way to relocate this line is to have it come below the dam. And the most practical place below the dam to relocate the line is on the property acquired by the plaintiff from the defendant.

I further find that it is highly desirable, in the operation of a hydro-electric plant, to be able to furnish power constantly without interruption. To assist in accomplishing this

purpose, the county has already built a steam plant at Buzzard Roost, and has also reached an agreement with the Abbeville Power Company for an interchange of power, and the plaintiff is now negotiating with the South Carolina Gas and Electric Company for interchange of power near Parr Shoals, and is also negotiating with Duke Power Company for interchange of power at the dam where this transmission line would be relocated. The more interchanges with other companies more nearly assures continuity of power, and it is not uncommon for a distributing company to have ten or twelve sources of supply. One of the factors that the county took into consideration in relocating the line of Duke Power Company was to make possible an interchange of power.

The recent case of *Lay v. State Rural Electrification Authority,* 182 S. C., 32, 188 S. E., 368, seems to be our only case discussing the question. Under the facts here, I think it clear that the uses proposed to be made of the property is within the purposes for which the property was condemned.

Considered independently of the desirability to effect an interchange of power with Duke Power Company, it appears that, under the general rule applicable in such cases, the use proposed to be made would be proper.

"In exceptional instances, where the ordinary method of condemnation is ill-adapted to the exigency and owners of land taken for a public use can be adequately compensated only by exchanging other adjacent land for the property taken, it is held that the acquisition of the land to be exchanged is covered by the public use. Thus, where a railroad company condemned a private right-of-way which was the only means of access of certain landowners to the public highway, it was held that the railroad might condemn a strip of land belonging to a stranger as a substitute for the private way in order to afford the owners full compensation for the taking. A like principle was applied where the United States Government condemned land for a townsite

to replace portions of a town flooded by a government reservoir. Also, it has been held that a state may properly condemn land to be exchanged for a portion of a railroad right-of-way, required in widening a state highway." 18 American Jurisprudence, § 80, page 711.

It is therefore, ordered, adjudged and decreed, that the plaintiff is the owner of the fee to the lands described in the complaint, and the defendant has no interest therein.

*Mr. Thomas H. Pope, Jr.,* for appellant, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Mr. Steve C. Griffith,* for respondent, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

December 10, 1940.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

A careful consideration of the record in this case convinces us that the lower Court correctly disposed of all the issues presented by the appeal, and we adopt its decree as the judgment of this Court. Let the decree be reported.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and STUKES concur.